LACHER and wife, Appellants, vs. VENUS and wife, Respondents.

*February 8—July 8, 1922.*

*Adoption: Children committed as dependents: Notice to parents of proceeding: Participation in dependent commitment: Consent of state board of control: Right of parent to custody of child: How extinguished: Constitutional law: Due process.*

1. The judicial proceedings for the adoption of children under ch. 173, Stats., are entirely distinct, separate, and independent from those for the commitment of dependent children to the care of the state under ch. 48.

2. Unless there is an abandonment of the child by its natural parents and such abandonment be found, the written consent of or actual notice to the natural parents is essential to the jurisdiction of the county court to make a lawful order of adoption for such child.

3. Notice to and participation by the natural parents in proceedings for commitment of the child to the state school as a dependent cannot be substituted for the written consent or actual notice to the parents required for valid adoption proceedings.

4. The written consent of the state board of control or of any guardian cannot be declared to be a legal and sufficient substitute for the written consent of the living natural parents, where required in adoption proceedings.

5. In proceedings in the juvenile court for the commitment of a child as a dependent to the state school, brought under ch. 48, Stats., the state is the principal and moving party and the immediate welfare of the child the paramount, if not the sole and controlling, consideration. Notice of such proceedings to the natural parents is not a jurisdictional essential for the court to proceed, and its judgment or order is not binding upon the natural parents of the child, regardless of whether they have notice or knowledge of the proceeding; but proceedings for the adoption of children are purely statutory, and since they affect substantial rights there must be a substantial compliance with their requirements.

6. Before the rights of natural parents are extinguished there must be an abandonment by the parents by conduct or written consent or notice given to them of the proceedings of adoption, the right of the natural parents to the custody and companionship of their children being a right of substance, though based on sentiment.

7. If the provision of sub. (3), sec. 48.22, Stats., that the consent of the state board of control in proceedings for the adoption of a child committed to the state school as a dependent shall have the same force and effect as if given by the parents of the child, is construed as amending sec. 4022, requiring the consent of or actual notice to the natural parents of the adoption proceedings, or as superseding that section, it is a violation of the constitutional rights secured to the individual in his family relationship.

8. The natural right of parents to the custody and affection of their children in addition to the right to their services and earnings and to damages for injuries impairing their ability to serve is within the protection of the constitutional provision as to due process of law as much as those rights which merely affect the pocketbook; and the parents cannot be deprived thereof without due process under sec. 1, art. I, of the state constitution, which includes the guaranty of due process in its general language as much as does the more specific language of amendment XIV, Const. of U. S.

9. The fact that it may interfere with the adoption of children committed to the state school to require notice of proceedings for such adoption to be given to the natural parents of the child does not justify the disregard of constitutional guaranties by permitting the parents to be deprived of their rights to be heard in the matter of the adoption.

10. Notice that some particular judicial proceedings are already instituted or proposed to be instituted, notice of the time and place where the hearings are to be had, and reasonable opportunity to be heard, are the essentials of due process of law.

OWEN, ROSENBERRY, and JONES, JJ., dissent.

APPEAL from a judgment of the circuit court for Monroe county: E. C. HIGBEE, Circuit Judge. *Reversed.*

The appellants, husband and wife, were at the times herein mentioned the parents of eight children.

Some years previous to the particular proceedings here involved the children were committed to the state school at Sparta by certain proceedings in the juvenile court of Milwaukee county because of the inability of the parents to provide for them. Later they were returned to the parents and the family moved to the city of Madison.

While the family was together in the city of Madison proceedings were had, the parents being notified thereof,

present and testifying, in the juvenile court of Dane county, then being held by the judge of the superior court of said county, and on November 15, 1917, six of such children, including a daughter Myrtle, born March 10, 1914, were committed to said state school for children at Sparta, the order reciting and adjudging that they were then dependent children and that said children' were without care, the parents being unable to care for them.

Thereafter and while Myrtle was still an inmate of said school the defendants *John C. Venus* and *Wanda Venus,* his wife, on August 24, 1918, petitioned the county court of Monroe county, wherein they resided and said school is located, for an order of adoption to make the said child, to all legal intents and purposes, the child of said petitioners and that its name be changed to Helen May Venus. At the foot of such verified petition the superintendent of said state school recited that he was fully acquainted with the facts and circumstances of the said application and was of the opinion that it would be advantageous to the child therein named that the prayer of the petitioners be granted, and certifying that said child is a ward of said school and in its legal charge and custody. There was a further indorsement by the then members of the state board of control consenting to the entry of an order of adoption in accordance with the prayer of the petition. On August 28, 1918, an order was made granting the prayer of said petition and finding that the petitioners are fit and suitable persons to have the care of such child and of sufficient ability to bring it up and furnish suitable nurture and education, having reference to the degree and condition of its parents, and that such adoption is proper. It was also ordered that the said petitioners, *John C.* and *Wanda Venus,* do stand in the place of parents of said child and that she shall be deemed to all legal intents and purposes their child and her name be changed to Helen May Venus and that she shall become and be their heir at law, and that the guardianship

of the state board of control of Wisconsin shall cease on the date of such order.

It is a conceded fact that no notice of such adoption proceedings were in any manner served upon or given to the natural parents of said child or either of them, and it appears that they did not know of the proceedings for some time.

On February 5, 1919, pursuant to an application made in January by the petitioner *Mrs. Lacher,* due notice whereof having been given to the state board of control, and after hearing, an order was made by the county court of Dane county finding and determining that *Mr. Lacher* was a fit and suitable person to have the care and custody of said six children and he was appointed guardian of said minors and required to give a bond in the sum of $500 for such purpose, and further directing that he and his wife were authorized to take and receive the said minors from the state school at Sparta and requiring the said school and any person having custody of said minors or any of them to forthwith transfer and release said six children (including Myrtle) to *Mr. Lacher.*

No appeal appears to have been taken by the state board of control, or any one, from such order so made.

In June, 1919, *Mr.* and *Mrs. Lacher* petitioned the county court of Monroe county, entitling such petition "In the Matter of the Adoption of Myrtle Lacher," for an order requiring the said *Mr.* and *Mrs. Venus* to show cause why the adoption proceedings of August 28, 1918, should not be set aside and vacated. Notice of such proceedings was served upon the superintendent of the state school at Sparta and upon *Mr.* and *Mrs. Venus.* Upon the hearing said order of adoption was declared void and of no effect and the custody and control of the said Myrtle directed to be given forthwith to its natural parents and that her name be Myrtle Lacher as before.

*Mr.* and *Mrs. Venus* appealed from such order to the

circuit court for Monroe county. There judgment was entered March 24, 1921, reversing said order and remanding the record to the county court with directions to confirm the prior order and judgment of adoption. From such order or judgment of the circuit court *Mr.* and *Mrs. Lacher* have appealed.

The substantial portions of the statutes as they stood at the time of the proceedings in 1917 and which we deem material for consideration in this matter are as follows:

## COMMITMENT PROCEEDINGS

*Under chapter 45g, entitled "The State Public School."*

Sec. 573, Stats. 1917, defined the object of the state school to be to care for dependent or neglected children placed therein until such time as temporary homes can be procured for them in good families. Supervision thereof is vested in the state board of control. (This is now found as sec. 48.19, Stats., with the words "or permanent" inserted between the words "temporary" and "homes," by ch. 540, Laws 1921.)

Under the subheading "Juvenile Courts," sec. 573—1 *et seq.* (now sec. 48.01, Stats.) defined dependent, neglected, and delinquent children and provided for their care and disposition by the juvenile court.

By sec. 573—5 (now sub. (1) to (3), sec. 48.06, Stats.) provision was made, in case of dependent or neglected children, for commitment by such court to the care, custody, and guardianship of some suitable state or county institution as provided for by law and providing for the form of notice and persons, including parents, to whom notice of such proceedings should be given. By ch. 350 of the Laws of 1917 there was inserted that which was made sub. *2a* of sec. 573—5 (now sub. (4), sec. 48.06, Stats.), providing that in case the summons or notice of hearing cannot be served upon and there shall be no appearance at the hearing of such proceeding by the parents, legal guardian, or

other person entitled to the custody of such child, no order shall be entered permanently depriving such person of the care and custody of such child except upon hearing and publication of notice in the manner provided by sec. 4022, Stats. (quoted *infra*); and providing further that such subsection shall not be construed as depriving the court of jurisdiction to make a temporary disposition of the case as hereinafter provided.

By sec. 573*d* (now sub. (2), sec. 48.22, Stats.) the said board of control was made the legal guardian of all children who shall become inmates of such school, and it was made its duty to use special diligence in providing suitable homes for them. It might make written contracts with responsible and suitable persons for the keep of such children during minority or until they attain the age of eighteen years.

Sec. 573*j* (now sub. (3), sec. 48.22, Stats.) read:

"The state board of control is hereby authorized to consent to the adoption of any child who is an inmate of the state public school by any person or persons in the manner provided by law; *and such consent given in writing shall have the same force and effect as if given by the parent or parents of such child.* . . . On the consummation of such proceedings the guardianship of said board over the child adopted shall cease." (This provision, in substance, has been continued since ch. 377, Laws 1885, created the state public school.)

These preceding statutes now appear in ch. 48, entitled "Child Protection and Reformation," and including among other subheads "Juvenile Courts" and "State Public School."

### ADOPTION PROCEEDINGS.

Long prior to 1917, then, and now, adoption proceedings were under "chapter 173," entitled "Adoption of Children," no substantial change having been made therein.

Sec. 4021, Stats., provides as to the place of making, and the persons who might make petition for leave to adopt a

child, and further provides that no such petition should be granted where the child, if fourteen years or more of age, did not consent thereto in writing in the presence of the court.

Sec. 4022, Stats., read:

"*No such adoption shall be made without the written consent of the living parents of such child* unless the court shall find that one of the parents has abandoned the children or gone to parts unknown, when such consent may be given by the parent, if any, having the care of the child."

It further provided for consent to be given by others where the parents are dead, unknown, or mentally incompetent or have abandoned the child.

It further provided:

"That *unless the living parent or parents* of a minor *consent* to such adoption it shall be the duty of the court having jurisdiction of the proceedings, upon the filing of any petition for adoption, by order to appoint *a time and place for hearing* such petition and *cause notice of such time and place* to be given to such parent or parents, by personal service of said notice on such parent or parents at least ten days before the hearing or by publication thereof in a newspaper at least three weeks successively prior to said hearing, and *when notice is duly given as herein provided the parent of any minor shall be bound by the order of adoption as fully as though he had consented thereto. . . .*"

Sec. 4023, Stats., provided for the form of the order of adoption when made and the change of the name of the child.

Sec. 4024, Stats., provided:

"A child so adopted shall be deemed, for the purposes of inheritance and succession by such child, custody of the person and right to obedience by such parents by adoption, and all other legal consequences and incidents of the natural relation of parents and children the same to all intents and purposes as if the child had been born in lawful wedlock of such parents by adoption, excepting," etc. "The natural parents of such child shall be deprived, by such order of

adoption, of all legal rights whatsoever. respecting such child and such child shall be free from all legal obligations of maintenance and obedience to such natural parents," etc.

For the appellants there was a brief by *F. K. Shuttleworth* and *F. D. Shuttleworth,* both of Madison, and oral argument by *F. K. Shuttleworth.*

*R. B. Graves* of Sparta, attorney for the respondents.

The *Attorney General* and *J. F. Baker,* assistant attorney general, attorneys for the State Board of Control.

A brief was also filed by *George E. Morton* of Milwaukee, as *amicus curiæ.*

The following opinion was filed May 9, 1922:

ESCHWEILER, J.  The question presented for decision may be stated thus:  Can a county court acquire jurisdiction so as to make a valid order of adoption as to an infant under fourteen years of age, then in the custody of the state board of control, where no written consent thereto has been given by the living natural parents of such child or due notice of such hearing served upon them?—the commitment of such child to the state school at Sparta having been made by a juvenile court on findings that the child was dependent and the parents unable then to care for the same, there being no finding to the effect that there has been an abandonment of the child by the natural parents.

We are constrained to answer this question as thus stated No, fully appreciating the possible far-reaching effect of such ruling.

We do not deal with or determine the questions that may arise where a record discloses or determines that there had been an actual and wilful abandonment by the natural parents of their offspring or such a condition of moral depravity on their part as warrants and requires a judicial determination that there is a moral abandonment thereof. We are here only concerned with a situation where sickness, poverty, untoward circumstances, or ill fortune enters

a home, and the state, entering also in its eminently proper and beneficent capacity as a guardian and conservator of the life, liberty, and happiness of its citizens, takes the children and supplies for the time that which the natural home cannot furnish them.

We base our conclusion in this case upon the following propositions:

First, the judicial proceedings for the commitment of dependent children to the care of the state under ch. 48, Stats., and the judicial proceedings for adoption under ch. 173 are entirely distinct, separate, and independent.

Second, that except there be an abandonment by the natural parents of the child and such fact of abandonment be found, the written consent of or actual notice to the living natural parents is an essential to jurisdiction of the county court to make a lawful order of adoption for such child.

Third, that notice of and participation in the commitment proceedings by the natural parents cannot be substituted for their required written consent to or notice of subsequently proposed adoption proceedings.

Fourth, that the written consent of the state board of control, or any guardian, cannot be declared to be a legal and sufficient substitute for the written consent of the living natural parents where required in such adoption proceedings.

In the proceedings in juvenile court for the commitment of children to the state school at Sparta or elsewhere under ch. 48, the state itself is the principal and moving actor, the immediate welfare of the child the paramount, if not the sole and controlling, consideration. Its fundamental purpose is the conservation of the child as a member of the state, and it extends alike to the child who is then not properly cared for by reason of the misfortune of its parents; is abandoned or neglected by reason of their wilful neglect to perform their parental responsibilities; or, being itself

delinquent, needs the supervision and control of the state. Such proceedings, therefore, reach out into at least three separate and distinct fields. The exercise of this broad and generous function of the state has been expressly declared to be based upon the quality of mercy rather than upon the idea of punishment. *Milwaukee Ind. School v. Milwaukee Co.* 40 Wis. 328, 337. Notice to the natural parents is not a jurisdictional essential for the court to proceed in any one of these several fields. All this has been repeatedly declared by this court. *Milwaukee Ind. School v. Milwaukee Co.* 40 Wis. 328; *Wis. Ind. School v. Clark Co.* 103 Wis. 651, 664, 79 N. W. 422; *Guardianship of Knoll,* 167 Wis. 461, 167 N. W. 744; *State v. Scholl,* 167 Wis. 504, 509, 167 N. W. 830; *State v. Zirbel,* 171 Wis. 498, 499, 177 N. W. 601; *In re Johnson,* 173 Wis. 571, 573, 181 N. W. 741; *In re Alley,* 174 Wis. 85, 90, 182 N. W. 360.

Any judgment or order in such proceeding, whether the parent has notice or knowledge thereof or not, is not conclusive or binding upon the parent. *Milwaukee Ind. School v. Milwaukee Co.* 40 Wis. 328, 339; *Guardianship of Knoll,* 167 Wis. 461, 467, 167 N. W. 744. It is so held elsewhere. *In re Kelley,* 152 Mass. 432, 25 N. E. 615; *Farnham v. Pierce,* 141 Mass. 203, 204, 6 N. E. 830; *In re Sharp,* 15 Idaho, 120, 96 Pac. 563, 18 L. R. A. N. S. 886 and note.

On the other hand, the proceedings for the adoption of children are purely statutory, and, affecting as they do substantial rights, there must be substantial compliance with their provisions. *Davis v. McGraw,* 206 Mass. 294, 298, 92 N. E. 332, from which state our statute was taken. Wis. anno. to sec. 4021, Stats., 1 Ruling Case Law, 593, 595; 1 Corp. Jur. 1371, 1373.

They in a measure involve a human triangle: the child at the apex, the living natural parents and the prospective adoptive parents completing the figure. The moving party here is not the state but the prospective adoptive parents.

They can obtain no rights as to the child except through the surrender by or deprivation of substantially the same rights then existing in the living natural parents. Neither statute nor judicial decree attempts to or could give to the new parent anything that is not surrendered by or taken from the natural parent.

Before such extinguishment of the rights of the natural parents and creation of rights in the adoptive parents there must be an abandonment thereof by the natural parents by conduct or written consent, or else due notice to them of the proceedings wherein such transformation is to take place. Such are the clear and explicit directions of the statutes, secs. 4022 *et seq.*, quoted above. Such would be the result in the absence of statutory provisions. Such are the repeated rulings of this court, from which we have no desire to recede, nor to the vigor with which they are expressed could we add. *Schiltz v. Roenitz*, 86 Wis. 31, 40, 56 N. W. 194; *Estate of McCormick*, 108 Wis. 234, 238, 84 N. W. 148; *Guardianship of Knoll*, 167 Wis. 461, 467, 167 N. W. 744. It is so held elsewhere, and almost everywhere. *Bell v. Krauss*, 169 Cal. 387, 391, 146 Pac. 874; *Sullivan v. People*, 224 Ill. 468, 476, 79 N. E. 695; *Taber v. Douglass*, 101 Me. 363, 64 Atl. 653; *People ex rel. Riesner v. New York N. & C. Hosp.* 230 N. Y. 119, 122, 129 N. E. 341; *In re Knott*, 138 Tenn. 349, 354, 197 S. W. 1097; 1 Ruling Case Law, 603; 1 Corp. Jur. 1384.

That such is a right of substance though based on sentiment is the recognized doctrine of this state. *Markwell v. Pereles*, 95 Wis. 406, 416, 69 N. W. 798; *Guardianship of Bare*, 170 Wis. 543, 548, 174 N. W. 906.

It is suggested that the provision of ch. 48 (now sub. (3), sec. 48.22) that the consent of the state board of control shall have the same force and effect as if given by the parents of such child proposed to be adopted, shall be considered as in effect amending the provision found in ch. 173, sec. 4022, Stats., *supra*, or if not, that such provision being

subsequent in enactment to the statutes found in ch. 173, the later shall control and override the earlier.

We cannot adopt that view. If such construction is to be regarded as an expression of the legislative intent to do away with the necessity of the consent or notice to the parents of children who have been committed from the juvenile court to the state institutions as dependents as prerequisites to valid adoption proceedings, then we must declare such attempted legislative declaration as a violation of the constitutional rights secured to the individual in his family relationship.

There is no element of consent by the mere appearance of the parents in the commitment proceedings to the possible instituting at some other time, place, and in some other court of adoption proceedings whereby the status of the family relationship may be permanently and entirely changed. There is no element of waiver on their part of subsequent need of due process of law as to such adoption proceedings. If such statutory regulation is valid they are powerless to say nay. They have no choice or other alternative.

The unit of the state is the individual, its foundation the family. To protect the unit in his constitutionally guaranteed right to form and preserve the family is one of the basic principles for which organized government is established. 1 Cooley, Torts (3d ed.) 27.

That natural parenthood implies both substantial responsibilities and gives substantial rights needs no discussion. That wilful neglect to perform the one may properly result in the forfeiture of the other is also not open to debate and not here for consideration.

A natural affection between the parents and offspring, though it may be naught but a refined animal instinct and stronger from the parent down than from the child up, has always been recognized as an inherent, natural right, for the protection of which, just as much as for the protection

of the rights of the individual to life, liberty, and the pursuit of happiness, our government is formed. We trust that it will never become the established doctrine that the state shall say to the parents, and particularly to the mother, she who doth travail, and in great pain bring forth her child and after labor doth rejoice that the child is born, that there is but a mere privilege and not a right to the subsequent affection, comfort, and pride of and in such child.

We have not overlooked those features in connection with the family relationship that savor of financial or property rights; the right to service, to earnings, to actions for damages against those who destroy or impair the ability to serve, the natural as well as the statutory right to support from the child even after its majority; the right to inheritance, all of which are certainly as much entitled to the protection of the constitutional provision as to due process of law as are those which merely affect the pocketbook. A money judgment entered against one without due notice is void. *Western P. & M. Co. v. American M. S. Co.* 175 Wis. 493, 185 N. W. 535.

If a man's money shall not be legally taken away from him save by due process of law, much less shall his child.

We do not deem it necessary to base this decision upon or dwell at any length upon such possible sordid, because material, grounds for our conclusion, but rest it upon the natural right of parenthood, a far finer and higher quality, and for that reason more sacredly to be upheld.

The normal man and woman who have exercised their inherent right to form the family relationship and have brought children into this world and who have not by wilful omission or commission on their part renunciated that relationship cannot and ought not to have such relationship destroyed, even by attempted action in the name of the state, save and except through due process of law.

Though these statements may perhaps seem trite, yet they are of vital importance to those who, like the petition-

Lacher v. Venus, 177 Wis. 558.

ers here, humbly assert them as against the seeming legis-
lative declaration to the contrary, and even against the good
Samaritan, the state, which entered the home for the benign
purpose of relieving the then present want by necessary, im-
mediate, and temporary separation of the family, and as
against the assertion by that same good Samaritan of its
claim to have thereby acquired the right to thereafter say,
as though it were the parent, that the natural blood ties of
the family shall be absolutely dissolved and new relation-
ships established.

Undoubtedly many children would be better cared for
were the state to shift them to other homes than those na-
ture gave them, and to what extent the state can lawfully
go in that field we need not now and do not now venture to
suggest; but to transform a temporary separation of the
family, incurred by reason of misfortune, into an absolute
severance of those ties so interwoven with human hearts,
should, and can, be done only under due process of law.

It is suggested that to require notice to be given to the
natural parents of any subsequently proposed adoption pro-
ceedings after a child has been committed to a state insti-
tution will seriously interfere with the obtaining of homes
by adoption for such children, and that such or similar con-
siderations based upon the idea of an absolutely primary
and paramount interest in the welfare of the child should be
sufficient to require the natural parents to forego their
rights to be heard on the question of whether such child
is to have a new permanent home and as to what the new
home shall be. However well founded, as an abstract
question, such view may be, we cannot permit it to over-
ride constitutional guarantees.

Under sec. 1, art. I, Wis. Const., which in its broad
language includes the guarantee of due process of law in
attempted judicial proceedings as much so as does the more
specific language of the Fourteenth amendment to the
United States constitution (*Ekern v. McGovern*, 154 Wis.

157, 239, 242, 254, 142 N. W. 595; *State ex rel. Milwaukee Med. Coll. v. Chittenden,* 127 Wis. 468, 506, 107 N. W. 500), and under that provision of the federal constitution as well, rights shall not be taken from one and conferred upon another except by due process of law.

Notice that some particular judicial proceedings are already instituted or proposed to be instituted; notice of the time and place where such hearings are to be had; reasonable opportunity to be heard, are the essentials of due process of law; anything short of this is absence thereof. *Seifert v. Brooks,* 34 Wis. 443, 448; *State ex rel. Milwaukee Med. Coll. v. Chittenden,* 127 Wis. 468, 506, 107 N. W. 500; *Ekern v. McGovern,* 154 Wis. 157, 240, 142 N. W. 595; *Truax v. Corrigan* (U. S.) 42 Sup. Ct. 124; 12 Corp. Jur. 1192; 6 Ruling Case Law, 446.

There having been a lack of due process of law, the attempted adoption proceedings in the county court of Monroe county in August, 1918, were void. The circuit court erred in reversing the order and judgment of the county court in these proceedings so holding.

*By the Court.*—Judgment reversed, and cause remanded with directions to affirm the order of the county court vacating the adoption proceedings and directing that the child Myrtle Lacher be forthwith restored to her natural parents, the petitioners.

Owen, J. (*dissenting*). Sec. 573—1, Stats. 1917, defined a dependent child and neglected child to include one that is "dependent upon the public for support." Sec. 573—4 provided that any reputable person, being a resident in the county, having knowledge of a child in his county who appears to be either neglected, dependent, or delinquent, may file with the clerk of the court having jurisdiction of the matter, a petition in writing, setting forth the facts, verified by affidavit. Sec. 573—5 provided that upon the filing of such petition a summons should issue from the court

requiring the person having custody or control of the child, or with whom the child may be, to appear with the child at the place and time stated in the summons. The same section also provided that the parents of the child, if living and their residence known, shall be notified of the proceedings in any case, and the judge may appoint some suitable person to act in behalf of the child. Sub. 3 of the same section provided that when any child under the age of sixteen years shall be found to be dependent or neglected, the court may make an order committing the child to the care, custody, and guardianship of some suitable state or county institution, as provided by law, or to the care, custody, or guardianship of some incorporated institution willing to receive it, embracing in its object the purpose of care of or obtaining homes for dependent or neglected children.

Acting under these statutory provisions, the juvenile court of Dane county, upon a proper petition and notice to the parents, adjudged that Myrtle Lacher was a dependent child, the parents being unable to care for her. The parents not only had notice of this proceeding, but, pursuant to the summons, produced said Myrtle Lacher in court and were present at and participated in the proceedings resulting in such adjudication. Upon such adjudication, and pursuant to the statutory authority referred to, said juvenile court committed said Myrtle to the state public school at Sparta. Thereafter, as set forth in the majority opinion, certain adoption proceedings were had in the county court of Monroe county, resulting in the adoption of said Myrtle by the defendants, consent to such adoption being given by the state board of control pursuant to sec. 573j, Stats. 1917, authorizing said board "to consent to the adoption of any child who is an inmate of the state public school by any person or persons in the manner provided by law; and such consent given in writing shall have the same force and effect as if given by the parent or parents of such child."

These adoption proceedings are held invalid by this court

for the reason that no notice of their pendency was given to
the parents of Myrtle and for the further reason that they
did not consent to the adoption.    The gist of the majority
opinion is that the right of the parents to the care, custody,
and control of the child is a most sacred right which cannot
be extinguished except by due process of law, which involves
a notice of the proceedings for that purpose and an oppor-
tunity to be heard.    To this principle I yield most hearty
acquiescence, but I cannot concur in the conclusion that
in this case the parents were denied due process of law.

The right of the parents to the care, custody, and control
of the child was effectually extinguished by the proceedings
in the juvenile court, wherein it was determined that Myrtle
was a neglected and dependent child, and as a result of which
she was committed to the state public school at Sparta.    Of
these proceedings the parents had due notice and they were
present at and participated therein.    As a result of those
proceedings the care, custody, and control of the child was
taken from them and the state thereupon assumed such care,
custody, and control as *parens patriæ*.    This, according to
my understanding, was well within the power of the state,
which thereafter stood in the relation of *loco parentis* to
the child.    Its care, custody, control, and destiny was there-
after in the care and keeping of the state until such relation
should be terminated in the manner prescribed by the stat-
utes.    But before any effort was made to have the care and
custody of Myrtle restored to the parents, the state board of
control, acting under and pursuant to the power conferred
by sec. 573*j*, consented to her adoption by the defendants
herein.    It is held by the court that this consent is not suf-
ficient, and that, in addition thereto, the consent of the
parents is essential to the validity of such adoption proceed-
ings, by reason of secs. 4021 and 4022, Stats., set forth in
the statement of facts.

These sections were introduced into our statutory law
in 1853.    Sec. 573*j* was enacted in 1885 as a part of the law

creating the state public school. To my mind the purpose of sec. 573*j* is clear and unequivocal. It was and is a necessary part of the state plan for the care, custody, and education of all children committed to that institution for whatever reason. By committing children to that school all parental rights in and over such children are terminated, and the state assumes full responsibility for their future care, maintenance, and education. In the prosecution of its duty the state seeks to place such children in good and wholesome homes at the earliest opportunity. All will agree, I think, that a state institution does not furnish the most desirable atmosphere in which to rear and nurture young and tender children. Their moral, mental, and physical development can best be accomplished in the atmosphere of a home where they will receive the nurture and care, the training and encouragement of those who may come to love them and feel a deep interest and pride in their growth and development. To this end the legislature, in full assurance of its duty and power in the premises, has delegated the state board of control to consent to the adoption, by proper foster-parents, of its wards committed to the state public school. To this extent sec. 573*j* was plainly intended as an amendment to secs. 4021 and 4022, and to dispense with the necessity for the consent of the natural parents to the adoption of its wards, responsibility for whose destiny it has assumed.

In my opinion, the consent of Myrtle's parents was not necessary to her legal adoption by the defendants. In my opinion, this does not result in depriving them of their parental rights without due process of law. They were accorded due process of law in the original proceeding, which resulted in the commitment of Myrtle to the state public school and to the care and custody of the state as *parens patriæ*.

I feel most deeply that the opinion of the court is a step in the wrong direction. I appreciate fully that it is prompted by the highest motives, and I am in full sympathy with the

humane spirit which pervades the opinion. But I have an abiding conviction that parental rights are unduly exalted and allowed to dominate the best interests of the child as well as of the public. That the state will be seriously frustrated in carrying forward its work of the good Samaritan can scarcely be doubted. There are hundreds of children in the state constantly demanding its care and protection. These children cannot be accommodated in the state public school and, even if they could be, they should not be kept in that institution longer than may be necessary to place them in comfortable and appropriate homes. Those who take children from such an institution naturally want some assurance of the permanency of the relation which they voluntarily and generously assume. They want some assurance that, if they are to assume the care and anxiety of the period of nurture of the child, they may have a claim to the solace and comfort which its protection and companionship afford in the years of youth and manhood and womanhood. I fear that the doubt which this decision must cast upon the legal status of adoptions from the state public school without the consent of the parents will greatly discourage prospective foster-parents in assuming the relationship, and that, regarding the great body of the state's dependent children as a whole, the best interests of such children have not been promoted.

In the majority opinion it is declared:

"Before such extinguishment of the rights of the natural parents and creation of rights in the adoptive parents there must be an abandonment thereof by the natural parents by conduct or written consent, or else due notice to them of the proceedings wherein such transformation is to take place. Such are the clear and explicit directions of the statutes, sec. 4022 *et seq.*, quoted above. Such would be the result in the absence of statutory provisions. Such are the repeated rulings of this court, from which we have no desire to recede, nor to the vigor with which they are expressed could we add. *Schiltz v. Roenitz*, 86 Wis. 31, 40,

56 N. W. 194; *Estate of McCormick,* 108 Wis. 234, 238, 84 N. W. 148; *Guardianship of Knoll,* 167 Wis. 461, 467, 167 N. W. 744."

These cases merely hold, as I freely concede, that the parental right cannot be extinguished without due process of law.  But in none of these cases was the court dealing with a situation where the state had assumed custody and control of the child upon due notice to the parents.  It has not been held in any prior decision of this court that proceedings of which the parents had due notice resulting in the state assuming the care, control, and custody of a child was a notice to the parents necessary to constitute valid adoption proceedings.

In *Guardianship of Knoll,* 167 Wis. 461, 167 N. W. 744, the child was committed to the state public school in proceedings under a law which did not provide for any notice to the parents.  The court there very properly held that the parents had never had due process of law.  In the other cases cited the child was not a ward of the state at all, and consent on the part of the state board of control was not involved.

It is said in the opinion, as I understand it, that to construe sec. 573*j* according to this contention would be to render it unconstitutional.  If by this it is intended to challenge the power of the state to assume control and custody of dependent children and make such disposition of them as may promote their best interests, then I think the position of this court is out of harmony with that of any court that has spoken upon the subject.  While the *right* of the parents to the care, nurture, and custody of their child is conceded, this right is attended with the concomitant *duty* to nourish, support, and educate the child, and when the parents are unable to perform this duty they forfeit their right to the care and custody of the child.  The state would, indeed, be most recreant did it fail to provide for the nourishment and maintenance of children of parents who are unable to nourish and maintain them.  This is a duty devolving upon

the state with reference to all dependent children, no matter what may be the reason for their dependence.   To deprive a parent of the care and custody of a child where the parent through misfortune or sickness is unable to support the child, appeals most strongly to one's sympathies and, I may say, that in such situations it comports more with the spirit of humanity for the state to provide the means of sustenance for the child at home rather than to sever it from the parents.   This, however, is a matter of policy.   The legislature is the judge of the manner in which the state shall deal with its dependent children, and it may, if it sees fit, perform that duty by taking them from their parental homes and placing them in institutions or homes of the state's choosing.

So far as my investigation has gone, the paramount right of the state in this respect has never been challenged.   It was said by Mr. Justice Story, as early as 1816, in *U. S. v. Bainbridge,* 1 Mason, 71, 79, 80, that

"Be the right of parents, in relation to the custody and services of their children, whatever they may be, they are rights depending upon the mere municipal rules of the state, and may be enlarged, restrained, and limited as the wisdom or policy of the times may dictate, unless the legislative power be controlled by some constitutional prohibition."   "Can there be a doubt that the state legislature can, by a new statute, declare a minor to be of full age, and capable of acting for himself at fourteen, instead of twenty-one years of age?   Can it not emancipate the child altogether from the control of its parents?   It has already, in the case of paupers, taken the custody from the parents, and enabled the overseers of the poor to bind out the children as apprentices or servants, during their minority, without consulting the wishes of the parents."

In *Bennet v. Bennet,* 13 N. J. Eq. 114, 118, it is said: "The relative rights of parent and child are all under the control and regulation of municipal laws.   They may and must declare how far the rights and control of the parent shall

extend over the child, how they shall be exercised, and where they shall terminate."

In *Whalen v. Olmstead*, 61 Conn. 263, 267, 23 Atl. 964, the mother brought a writ of *habeas corpus* to secure possession of her child committed to a state home because of her inability to care for the child, upon the ground that she was then able to do so. It seems that under the statute the board having control of the institution was empowered to release the child in its discretion. During the course of the opinion the court uses this language:

"It is indeed true, as the plaintiff further says, that the homes provided by the statute are not penal or reformatory institutions, and are not intended for the detention of children for the purposes of punishment or moral reformation. Such homes are provided in the exercise of a guardianship and protection assumed by the state as *parens patriæ*, taking to its bosom its infants, deserted, neglected, cruelly treated, or dependent, and giving to these homeless ones a home. Under the conditions contemplated by the statute it would be absurd to deny that the right of the parent to the control, custody, maintenance, and education of his or her minor children must yield to the state, and that the welfare and best interests of the child, in questions relating to custody, is paramount to all other considerations."

In *State v. Clottu*, 33 Ind. 409, 411, the court says:

"The duties and authority pertaining to the relation of parent and child have their foundations in nature, it is true. Nevertheless, all civilized governments have regarded this relation as falling within the legitimate scope of legislative control. Except in countries which lie in barbarism, the authority of the parent over the child is nowhere left absolutely without municipal definition and regulation. The period of minority is fixed by positive law, when parental control shall cease. Within this, the age when the child may marry at its own will is in like manner defined. The matter of education is deemed a legitimate function of the state, and with us is imposed upon the legislature as a duty by imperative provisions of the constitution. The right of cus-

tody, even, is sometimes made to depend upon considerations of moral fitness in the parent to be intrusted with the formation of the character of his own offspring.    In some countries, and even in some of our American states, education has for more than a century been made compulsory upon the parent, by the infliction of direct penalties for its neglect.    The right of the parent to ruin his child either morally or physically has no existence in nature.    The subject has always been regarded as within the purview of legislative authority.    How far this interference should extend is a question, not of constitutional power for the courts, but of expediency and propriety, which it is the sole province of the legislature to determine.    The judiciary has no authority to interfere with this exercise of legislative judgment; and to do so would be to invade the province which by the constitution is assigned exclusively to the lawmaking power."

In *Stearns v. Allen,* 183 Mass. 404, 408, 67 N. E. 349, the court says:

"Adoption involves a change of status.    So far as the adopting parents are concerned, the change cannot be made without their consent.    So far as an infant child is concerned, the state, as his protector, may make the change for him.    The natural parents of the child should be considered and their natural rights should be carefully guarded, but their rights are subject to regulation by the state, and if these come into conflict with the paramount interests of the child, it is in the power of the state, by legislation, to separate children from their parents when their interests and the welfare of the community require it."

Indeed, this principle has been declared by our own court in scarcely less emphatic language in *Schiltz v. Roenitz,* 86 Wis. 31, 56 N. W. 194, where it is said:

"It is not disputed but that a father has dominion, by right, over his minor children, nor that such primary right may be lost or forfeited by him by abandonment, neglect, or abuse.    The right of the parent is not absolute and unconditional.    The necessities and well-being of the social state enter so largely into the question of the dominion and

Lacher v. Venus, 177 Wis. 558.

control of the parent over his child that, in the interest of society and the physical and moral necessities of the child, the entire subject is one of appropriate legislation, providing in what manner the parent may be deprived or restrained in the exercise of his natural rights by reason of neglect, abandonment, or abuse."

I have no doubt of the power of the state to assume custody and control of minor children who are dependent and neglected even though it be by reason of the misfortune and inability of well-meaning parents to provide for them, and to control and direct their future destiny, disposing of them in such manner as may appear to those charged with the duty and responsibility of acting on behalf of the state in that respect to be for the best interests of the child and the public. In my opinion, when the child Myrtle was committed to the state public school by the juvenile court the parental right of control was extinguished until returned by the state in the manner provided by law; that the state had the power, and that the statutes authorized the state board of control to fully and adequately consent to the adoption proceedings, and that by virtue thereof she became the legally adopted child of the defendants in this case, and that the judgment of the circuit court should be affirmed.

I am authorized to state that Mr. Justice ROSENBERRY and Mr. Justice JONES concur in the foregoing dissenting opinion.

A motion for a rehearing was denied, without costs, on July 8, 1922.