## IN RE ADOPTION OF FRANK JOSEPH KURE.
## A. G. McKENZIE AND ANOTHER, PETITIONERS.[1]

April 24, 1936.

No. 30,898.

Victor E. Essling and Galen E. Bush, for appellants.

Harry H. Peterson, Attorney General, and Roy C. Frank, Deputy Attorney General, for State Board of Control.

LORING, JUSTICE.

Petitioners appeal from a judgment of the district court of St. Louis county which denied their petition to adopt Frank Joseph Kure, a minor child.

[1]Reported in 266 N. W. 746.

The child was born at St. Paul in April, 1931, and shortly after its mother was committed to the state hospital for the feeble-minded and has ever since been there confined. The father, being unable to care for the child, petitioned the juvenile court of St. Louis county to commit it to the care of the state. The juvenile court found the child to be dependent and committed it to the care of the Minnesota board of control. Shortly after commitment the board placed the child in the home of the petitioners under an agreement to pay them $20 per month for its care. The child remained in their home for over three years and was then removed to an orphanage for observation. A few months later this petition for adoption was filed. The father consented to the adoption. The board refused to consent to the adoption on the sole ground that it has a rule forbidding the adoption of a child by parties of different religious faith than that of the parents of the child sought to be adopted. This child was born of Catholic parents, and the petitioners are of Protestant faith.

The question before us is whether the consent of the board of control is a necessary prerequisite to the adoption of a child committed to its care and whether that consent may be unreasonably withheld when, as here, the adoption appears to be the only satisfactory solution of the child's welfare. The pertinent section of the statute, 2 Mason Minn. St. 1927, § 8626, is set forth in the margin.[2] Unquestionably the consent of parents, not otherwise incapacitated, must be obtained before a valid adoption of their child can be effected. Nor after what was said in In re Mair, 184 Minn. 29, 237 N. W. 596, is there any question about the necessity of the consent of a guardian where the parents are incapacitated.

[2]"8626. Except as herein provided no adoption of a minor shall be permitted without the consent of his parents, but the consent of a parent who had abandoned the child, or who cannot be found, or who is insane or otherwise incapacitated from giving such consent, or who has lost custody of the child through divorce proceedings or the order of a juvenile court, may be dispensed with, and consent may be given by the guardian, if there be one or if there be no guardian, by the state board of control. In case of illegitimacy the consent of the mother alone shall suffice. In all cases where the child is over fourteen years old his own consent must be had also."

Adoption is a creature of statute. It was unknown to the common law. But when the adoption statute was enacted the legislature recognized that there is a right springing from the natural affection between parents and child that cannot be taken away, and it inserted the provision that "no adoption of a minor shall be permitted without the consent of his parents." The reasons underlying that provision are well set out in Lacher v. Venus, 177 Wis. 558, 569, 188 N. W. 613, 617, 24 A. L. R. 403:

"A natural affection between the parents and offspring, though it may be naught but a refined animal instinct * * * has always been recognized as an inherent, natural right, for the protection of which, just as much as for the protection of the rights of the individual to life, liberty, and the pursuit of happiness, our government is formed. We trust that it will never become the established doctrine that the state shall say to the parents, and particularly to the mother, she who doth travail, and in great pain bring forth her child and after labor doth rejoice that the child is born, that there is but a mere privilege and not a right to the subsequent affection, comfort, and pride of and in such child."

That natural affection between parents and child is exclusively theirs. It gives rise to rights which cannot be taken away. It is paramount, as between parents not incapacitated and third persons, to the welfare of the child. And we have said that if the parents are living and not otherwise incapacitated under the provisions of the statute, it would be error to order the adoption of a child without the parents' consent no matter how unreasonably they might withhold it. In re Mair, 184 Minn. 29, 237 N. W. 596. See also Lacher v. Venus, 177 Wis. 558, 188 N. W. 613, 24 A. L. R. 403. That rule is based on the inherent rights of parenthood. The state may, under circumstances like those set forth in 2 Mason Minn. St. 1927, § 8636, et seq., relieve the parents of the custody of a child, but the transfer of the custody does not transfer the inherent rights of parenthood. The welfare of a child that has been committed to a state institution or placed under guardianship is the chief concern of the state.

"For its protection and the good of the child, the state may, *through its courts,* place the child in charge of some person or institution for proper training and support. \* \* \* The whole tenor of the act [juvenile court act] indicates that the sole purpose is the welfare of the delinquent as well as the dependent or neglected child." Peterson v. McAuliffe, 151 Minn. 467, 469, 187 N. W. 226. (Italics supplied.)

As said in Lacher v. Venus [177 Wis. 566]:

"Its [the state] fundamental purpose is the conservation of the child as a member of the state. \* \* \* The exercise of this broad and generous function of the state has been expressly declared to be based upon the quality of mercy."

In furtherance of its design to protect the dependent child's welfare, the legislature provided for the consent of the board or person having control of the child to its adoption. But it is readily apparent that this consent is not the same right as that exercised by the parents. It is significant that the statute denies the right of adoption when parents, not otherwise incapacitated, withhold their consent, while the consent of incapacitated parents *"may be dispensed with"* and the consent of the board of control or guardian *"may be given."* The consent of those in custody of the child is simply an additional safeguard to the child's welfare. With the child under the control of the state as it is, when in the custody of the state board or a guardian, its welfare is the state's paramount object.

The reasons for requiring the consent of the guardian are set out in In re Mair, 184 Minn. 29, 237 N. W. 596. It was there said that it might well be argued that those reasons do not apply to the board of control. May that board withhold its consent and thereby defeat the petition when the best interests of the child compel a court to find that failure to grant the petition would be inimical to the best interests of the child? We think it cannot so defeat the manifest purpose of the law. When we consider all of the manifold provisions of the juvenile court act together with the adoption statute we find none of the reasons applicable to parents or to

guardians to be persuasive as to the board. Jurisdiction is complete in the court, and it may proceed with the sole view to the best interests of the child. It need not dismiss on motion of the board, and it may disregard the board's refusal to consent in case that refusal is unreasonable.

In the case at bar the petitioners had taken the child when it was four months old and kept it for three years. They were of Protestant faith but had agreed to rear the child in the Catholic faith. While the child was in their custody they voluntarily had it baptized in the latter church. They arranged with a priest to instruct the child when it should require religious instruction. There is no dispute about the quality of the home that the petitioners can furnish. The father has approved it. The respondent admits that petitioners are of good moral character and are financially able properly to care for, support, and educate this child. In its memorandum the trial court states:

"There is no question about their good faith, and their ability and willingness to make whatever sacrifices are necessary to bring the child up properly. That the State Board may be able to find as good a home will be purely a matter of chance. * * * The chances of finding as good a home are very slight, so it is with great reluctance that the Court feels that * * * the petition cannot be granted."

Insofar as the operation of the rule is not inimical to the best interests of the child, the board may be justified in not consenting to the placing of the children with adoptive parents of a different faith; but blindly to follow such a rule after placing the child for support with a well-qualified family for a period so protracted that a strong affection for the child is permitted to develop is, in our view, unreasonable. The affection of foster or adoptive parents is the child's greatest asset in life. It usually means a good education and a start in life. Where, as here found by the trial court, it is accompanied by character building surroundings and complete religious tolerance, and the chances of matching the surroundings and affection elsewhere are slight, the board's action becomes so unreasonable as to fall within the definition of caprice.

The petitioners are evidently of that opinion and are willing to see the child travel the route its parents took with complete faith that there will be no stumbling blocks in either that route or their own; nor that religious controversy may mar the happy relationship which they propose. In doing so they will not only increase their own spirit of religious tolerance but will be a fine example to others. In refusing them this privilege under the circumstances here found the board, though no doubt endeavoring to act in utmost good faith, is nevertheless doing so in such complete contradiction to the welfare of the child as to make its denial arbitrary and capricious in the eyes of the law as applied in this instance. It may not withhold its consent in that manner, and the trial court is wholly justified in proceeding as if the consent which ought to have been given had been given. The facts here demand that it should so proceed.

The judgment appealed from is reversed and the case remanded with directions to proceed as indicated in this opinion.