**BROOKS et ux. v. DE WITT et ux.**

No. 11370.

Court of Civil Appeals of Texas.
San Antonio.
Feb. 16, 1944.

Rehearing Denied March 16, 1944.

Davis, Hall, Clemens & Knight, of San Antonio, for appellants.

Leonard Brown, of San Antonio, for appellees.

H. P. Drought, of San Antonio, amicus curiae.

## PER CURIAM.

This is a child custody case. Plaintiffs below and appellants here are Jacque O. Brooks and his wife, Mona Louise Brooks, natural parents of the infant, Jacqueline Louise Brooks, also known as Patricia Ann DeWitt. Defendants below and appellees here are Fred J. DeWitt and wife, Ann DeWitt, who claim custody of the child by adoption. This right is predicated upon two decrees of the district court, i.e., a decree adjudging the child to be a dependent or neglected child in accordance with the provisions of Articles 2329 and 2338, Vernon's Ann.Civ. Stats., and a de-

cree of adoption entered in accordance with Article 46a, Vernon's Ann.Civ. Stats. Plaintiffs asserted that these decrees were entered without notice to them and are consequently not binding upon them. After a trial without a jury, judgment was rendered for the defendants. Upon request, findings of fact and conclusions of law were filed. In effect, the trial court held that the decrees above mentioned were binding upon plaintiffs. That holding is vigorously attacked here.

For the purpose of stating the case and the facts giving rise thereto, we shall use that designation of the parties employed in the trial court. It appears that in the late summer of 1940 plaintiffs, theretofore residents of Jacksonville, Florida, came to San Antonio and rented a room in a residence at 225 E. Locust Street. The residence and a garage apartment on the premises were also occupied by Mrs. P. H. Rylander and their daughters, Mrs. Thelma Grooms, Mrs. Edith Jordon and Mrs. DeWitt and the latter's husband.

Plaintiffs, aged twenty-five and eighteen, respectively, were in straightened financial circumstances and Jacque Brooks, in ill health, was looking for employment. On September 9, 1940, shortly after the couple arrived in San Antonio, a baby girl was born to Mrs. Brooks, and after leaving the hospital plaintiffs brought the child to the parents' room on Locust Street, and remained there with her for the time being.

The father failed to secure steady employment in San Antonio, and for that and other reasons the couple decided to return to Florida, by automobile. Because of unfavorable weather and other adverse conditions, and at the solicitation of Mrs. Grooms and other members of her family, who had become attached to the child, plaintiffs decided to leave their baby with the family. Accordingly plaintiffs arranged with Mrs. Grooms to care for and keep the child until plaintiffs sent for it, when Mrs. Grooms was to take it to them in Florida and thereby procure a trip she had long coveted. In the meantime plaintiffs agreed to send Mrs. Grooms five dollars per week for caring for the child until plaintiffs could send for it. Under that arrangement the parents returned to Florida, without their baby, leaving San Antonio on November 15, 1940. They kept their agreement, sending Mrs. Grooms the specified payments, until January 4, 1941, when they ceased communicating with her or her relatives in San Antonio.

A little over four months later, however, on Mother's Day, May 12, 1941, the parents called Mrs. Grooms by long distance telephone from Florida and told her they were ready for her to bring their baby to them in accordance with their agreement with her. Mrs. Grooms then told them she could not take the baby to plaintiffs, stating as a reason that her brother-in-law and sister, defendants DeWitt, had already "adopted" the child. This was the first notice or intimation plaintiffs had of any proceedings or intention to institute proceedings in the courts of Bexar County concerning their infant daughter. We are now relegated to a statement of those proceedings.

On March 12, 1941, five months after plaintiffs left their baby in San Antonio under their arrangement with Mrs. Grooms, Mrs. R. C. Hugman, Executive Secretary of San Antonio Social Welfare Bureau, in obvious collaboration with defendants and Mrs. Grooms, filed her petition in a district court of Bexar County, sitting as a Juvenile Court, praying that the Brooks baby be declared a dependent child under the provisions of Articles 2329 and 2338, supra. In an amended petition filed on March 21st Mrs. Hugman alleged sufficient facts to authorize judgment declaring the child a dependent as defined in Art. 2330, and, further,

"That the name of the mother of said child is Mona Louise Shuman Brooks, and the name of the father of said child is Jacque Reyes Brooks, and their place of residence is unknown, but when last heard of they were living in Jacksonville, Florida."

It was further alleged that the child "has no guardian."

It is provided in Art. 2332 that if it appears that one or both parents of the child, or its guardian if it has no parents, reside in the county, the clerk of the court "shall immediately issue citation * * * which shall be served (by the sheriff or any constable of the county) on such parent, parents, or guardian, if any, if either can be found in said county * * *. If it appears from the petition that neither of said parents are living, or do not reside in said county and that said child has no guardian residing in said county, * * * then the citation herein provided for shall not be issued; and the court may thereupon proceed to a hearing of the case. In case neither of the parents or guardian

is found, then the court shall appoint some suitable person to represent said child in said cause."

Under these provisions of the statute and the responsive allegations of the petition, no process was issued or other character of notice given to plaintiffs or any one in their behalf, and after appointing a suitable person to represent the child, the Juvenile Court proceeded to a hearing, at the conclusion of which judgment was rendered declaring the child a dependent child as defined in the statute. It was recited in the judgment that

"And it appearing to the Court that neither of the parents, nor a lawful guardian of said child, can be found, Howard R. Whipple, an attorney of this Court, who is found by the Court to be a suitable person, is hereby appointed to represent said child in this cause, and now appears herein in such behalf;

"And it appearing to the Court that neither of the parents of said child resides in said County, and that said child has no guardian, the Court finds the issuance of citation in this cause is not required; * * *"

It was further recited in the judgment that "said child's mother is Mona Louise Shuman Brooks, and that if living her whereabouts is unknown; that the name of the said child's father is Jacque Reyes Brooks, and that if living his whereabouts is unknown; * * * that the occupation of the parents of said child is unknown; and that said parents have abandoned said child, and that the cause of said child being dependent is that said parents have refused to keep it or care for it, but have neglected it or have abandoned it, and that said child is destitute and homeless, and has no proper parental care or guardianship.

"It Is Therefore Ordered, that said child be, and she is hereby adjudged a dependent child; that the parental rights of the parents of said child be, and the same are hereby terminated; that said child is hereby turned over to the care and custody of Mrs. R. C. Hugman, Executive Secretary of the San Antonio Social Welfare Bureau, San Antonio, Texas, * * * and that she shall have the right to the custody of said child, subject to the further orders of this Court, and that said child shall become a ward of and subject to the guardianship of said Mrs. R. C. Hugman."

On March 24, 1941, just three days after rendition of judgment in the dependency proceeding, defendants prepared and on March 26th filed in the district court their petition for the adoption of the Brooks child under the provisions of Art. 46a, Vernon's Ann.Civ. Stats.

Section 6 of said Article, as amended in 1937, by the Acts of the 45th Legislature (p. 1324), reads in part as follows:

"Except as otherwise amended in this Section, no adoption shall be permitted except with the written consent of the living parents of a child; * * *.

"Consent shall not be required of parents whose parental rights have been terminated by order of the Juvenile Court or other Court of competent jurisdiction; provided, however, that in such cases adoption shall be permitted only on consent of the superintendent of the home or school, or of the individual to whom the care, custody, or guardianship of such child has been transferred by a Juvenile Court or other Court of competent jurisdiction. * * *"

As in Section 6 provided, Mrs. Hugman, to whom in her capacity as Executive Secretary of the San Antonio Social Welfare Bureau the custody of the child had been awarded in the dependency proceeding, endorsed on the petition her consent to the adoption of the child.

On March 31, 1941, five days after the filing of the petition, and admittedly without any notice, official, actual or constructive, to plaintiffs, a hearing was had and judgment was rendered granting defendants' petition for adoption of said child, and changing its name from Jacqueline Louise Brooks to Patricia Ann DeWitt.

In Matthews v. Whittle, Tex.Civ.App., 149 S.W.2d 601, it was held by the El Paso Court of Civil Appeals that a judgment or decree entered in accordance with the provisions of Articles 2329–2338, R.S. 1925, adjudging an infant to be a dependent and neglected child operated as a judicial determination that the natural parents had no further "right over or to the custody, services or earnings of said child;" the decree having so provided (Article 2337), and the natural parents having actually participated in the hearing which resulted in the order.

As a corollary to this holding, it was also held that as the natural parents had no rights in and to the child after the entry of the dependency decree, no rights of

theirs were violated by subsequent adoption proceedings affecting the child of which they (the natural parents) had no notice. Defendants rely chiefly upon that case for support of the judgment here appealed from. But this case differs from that of Matthews v. Whittle, in that here the natural parents not only did not participate in the dependency proceedings, but actually had no notice thereof. In this proceeding the decree rendered contained certain findings that "said parents (plaintiffs in this suit) have abandoned said child" and "have refused to keep it or care for it." The decree concludes, as a matter of law, that "the parental rights of the parents of said child be, and the same are hereby terminated."

■■■ Plaintiffs contend that they were entitled in the present suit to controvert the findings recited in the decree entered in the dependency proceedings and in the present suit demonstrate that they had not abandoned their child and had not refused to care for it. Plaintiffs say that not being parties to the dependency proceedings they are not bound by the decree entered therein. Plaintiffs assert that the due process clause of the Fourteenth Amendment to the Constitution of the United States, as well as the provisions of Article 1, Section 19 of the Texas Constitution, Vernon's Ann.St., forbids a holding giving binding effect to this decree as against them. Further, plaintiffs assert that the evidence adduced upon this trial shows conclusively that plaintiffs did not abandon their child; that they were guilty of no acts which would in fact justify the entry of a decree that their rights in and to their child had terminated under the provisions of the dependent child statute, Articles 2329–2338; that they instituted the present suit seeking to set aside the dependency decree as well as the adoption based thereon within the statutory period, Article 5529, Vernon's Ann.Civ. Stats.; and that they were not guilty of delay or laches in instituting the present suit. Clearly, this suit was not barred by limitations. As to laches, it appears that plaintiffs knew nothing of the fast moving and to them secret proceedings ending in the Juvenile Court on March 26th, and in the district court on March 31st, until Mother's Day, May 12, 1941. Plaintiffs remained in Florida, but, in August, 1942, by long distance telephone they invoked the services of an attorney in San Antonio to aid them in recovering their rights in and possession of their child.

After investigation, the attorney advised them by letter against taking any action, on the theory of prior adjudication. They were still in financial straits, but set about to accumulate funds with which to litigate the matter, to which end they built up a necessary fund of $2,000, and thereupon came to San Antonio and employed their present counsel, and on May 12, 1943, instituted this suit to set aside the judgments of the Juvenile and District Courts and recover the custody of their child, then two and one-half years old.

It is our conclusion that under the facts of the record it can not be said that plaintiffs' suit was barred by unreasonable delay or laches in view of the circumstances of the parties.

■■ It is apparent that the particular contentions of plaintiffs, hereinabove set forth (which appear in the brief among others), are in general accordance with the rules governing direct attacks upon judgments. We are inclined to the view that this is a correct analysis of the legal situation presented. Judgments involving custody of infants rendered by courts admittedly having jurisdiction of the infant can hardly be regarded as void (because of lack of notice to the parents) in the broadest sense of the term. This is illustrated by the case of Nugent v. Powell, 4 Wyo. 173, 33 P. 23, 20 L.R.A. 199, 62 Am.St.Rep. 17, in which it was held that adoption proceedings had without notice to the father of the child involved were not void in the sense that the adoption was a nullity and consequently subject to attack by collateral heirs of the adoptive parents. In other cases the adoption proceedings are described as being valid as to the child but void as to the parent who had no notice thereof. Schlitz v. Roenitz, 86 Wis. 31, 56 N.W. 194, 21 L.R.A. 483, 39 Am.St. Rep. 873. In ordinary property cases, a judgment in favor of A against B for the recovery of Blackacre is not binding upon C, who not being a party to the action may attack the judgment collaterally. 25 Tex. Jur. 681, § 251. However, a parent's rights in and to a child are not the same as those a person has in and to a chattel. "A child is not in any sense like a horse or any other chattel. * * *" Chapsky v. Wood, 26 Kan. 650, 652, 40 Am. Rep. 321. In discussing a parent's right to dominion over and custody of a child, the Supreme Court of New Jersey, in Fischer v. Meader, 95 N.J.L. 59, 111 A. 503, 504, quotes the

following with approval from In re Moore, 11 Irish C.L.R. p. 1:

"The dominion which a parent has over a child is a qualified one and given for the discharge of important trusts. He will be secured in it so long as, and no longer than he discharges the correlative duties; and a failure in them, under circumstances and to an extent to bring on him the brand of unfitness, amounts to a forfeiture of his right and warrants the interposition of the proper legal tribunal for the protection of the child, by wresting from the parent the trust which he has abused, or which the court plainly sees he is unable or unwilling to perform. The right to the custody and services of the child, and the obligation to support and educate, are reciprocal rights and obligations; they are dependent upon each other; they do not exist apart."

■ In our opinion the passage quoted correctly states the basis, nature and limitations of a parent's rights in and to a child. An exhaustive discussion of the nature of these rights is also contained in Nugent v. Powell, 4 Wyo. 173, 33 P. 23, 20 L.R.A. 199, 62 Am.St.Rep. 17, hereinabove referred to.

It seems also that the Texas adoption statutes are based upon the theory as hereinabove set out, that is, the recognition that a parent may lose what rights he formerly had in and to a child, not only by express waiver evidenced by written consent, but also by abandonment for a period of two years, or by such neglect as would authorize a juvenile court to enter a judgment declaring the child a dependent or neglected child in accordance with the provisions of Articles 2329–2338. See Article 46a, Sec. 6, as amended by Acts 1937, 45th Leg. p. 1324.

■■ While the State undoubtedly has an interest in the status of infants within its jurisdiction and may prescribe by statute reasonable tests and standards from which it may be determined whether or not parents by neglect or unsocial conduct have in fact lost their rights in and to a child, it is also true that the rights of parents over their children are in the nature of property rights and protected by the due process clause of the Fourteenth Amendment of the United States Constitution. Schlitz v. Roenitz, supra, as well as by Article 1, § 19, of the Constitution of the State of Texas. This means that the plaintiffs here were entitled to a hearing and judicial determination of whether or not they have been guilty of abandonment or neglect of their child (or other anti-social conduct proscribed by statute) and consequently have no further rights in and to their child.

■ To summarize, then,—this is a suit by natural parents to recover custody of their child from those having actual custody of said child. The plaintiffs made out a prima facie case for recovery by proving, (a) their relationship to the child, State ex rel. Wood v. Deaton, 93 Tex. 243, 54 S.W. 901, and (b) that they had not delayed an unreasonable length of time in instituting the suit. The burden then rested upon the defendants to prove that plaintiffs had been guilty of neglect or other conduct condemned by statute which operated to terminate plaintiffs' rights of dominion and control over the child involved. This fact could have been established by a decree entered in accordance with the provisions of Articles 2329–2338, had plaintiffs been parties thereto or had proper notice thereof, but as it affirmatively appears that plaintiffs had no notice of said proceedings, it follows that the decree entered is not binding upon them, and the recitations contained therein are not competent as evidence upon the issue of whether or not plaintiffs have been guilty of acts or omissions which would terminate their right of custody to their child. The burden therefore lay upon defendants to establish the fact of neglect or anti-social conduct by evidence extrinsic to the decree. This burden defendants failed to meet. The trial court found that although Jacque O. Brooks was in the United States Army, "Mona Louise Brooks is now living with her mother and is able to take care of said minor child," and that plaintiffs are suitable persons to whom the custody of their child may be properly entrusted. It follows that judgment should have been for plaintiffs as prayed for. State ex rel. Wood v. Deaton, supra.

This case admittedly poses questions involving extreme difficulties and the gravest responsibility. Assuming that the several parties are endowed with the normal sensibilities of civilized human beings, the ultimate disposition of this case will strike deeply and cruelly into the emotional lives of the losing parties, to be carried with them in grief and bitterness so long as they shall live. It is a decision that can

be made only in sorrow, and yet in strictest accord with the letter of the laws of the land. We believe the decision here reached is supported by the overwhelming weight of American authority. Whatever different theories may have been propounded relative to the legal relationship of parent and child, the classification of various decrees affecting such relationship when entered without notice or knowledge of the parent—as to their being void or voidable, valid in part and void in part—all authorities seem agreed that upon demand by a parent, due process of law requires that he or she be heard and that the question of whether or not a parent's rights in and to a child have terminated be judicially determined. We give effect to this rule. Child Savings Institute v. Knobel, 327 Mo. 609, 37 S.W.2d 920, 76 A.L.R. 1068. Annotations 76 A.L.R. 1077–1083; Sinquefield v. Valentine, 159 Miss. 144, 132 So. 81, 76 A.L.R. 238; Annotations 76 L.R.A. 242–258; Lacher v. Venus, 177 Wis. 558, 188 N.W. 613, 24 A.L.R. 403; Annotations 24 A.L.R. 416–429; 1 Am.Jur. 642; 2 C.J.S., Adoption of Children, § 21, p. 387, 388.

The child is now more than three years of age and the uncertainties of its status should be terminated at the earliest moment consistent with law and justice. The legal right of the parents to its custody was unquestioned until the dependency proceedings were instituted, on March 12, 1941, when the custody of the child was improvidently placed in another, under order of a court of competent jurisdiction, upon a palpably erroneous conclusion that its natural parents had permanently abandoned it on November 15, 1940. In this proceeding a trial of the right of custody was for the first time properly before a court of competent jurisdiction, and it being conceded that plaintiffs are the lawful and natural parents of the child, and the trial court having found on competent evidence that plaintiffs are suitable persons to take custody of the child, that custody should have been awarded to them.

For the reasons stated, the decrees in Cause No. 1790 (the dependency case) and in Cause No. 1966 (the adoption proceedings) will be set aside and held for naught, and the judgment in this cause will be reversed and the cause remanded to the trial court with instructions to enter judgment awarding the custody of the minor, Jacqueline Louise Brooks, to plaintiffs, Jacque O. and Mona Louise Brooks.