IN THE MATTER OF CUSTODY OF DEBRA CAROL SIMPSON AND JOHNNY SIMPSON, MINORS.

(Filed 12 June 1964.)

**1. Adoption § 1;    Courts § 16—**

The clerk of the Superior Court has exclusive original jurisdiction in adoption proceedings, and the Superior Court has no jurisdiction except on appeal from the clerk. G.S. 48-12, G.S. 48-27.

**2. Courts § 16—**

The juvenile court has exclusive original jurisdiction to determine the right to custody of children under 16 years of age in all cases except those in which the Superior Court is given jurisdiction by G.S. 17-39 or G.S. 50-13, and thus has exclusive jurisdiction to award the custody of an abandoned child, G.S. 110-21.

**3. Same—**

Where children have been adjudged abandoned by the juvenile court and their custody placed in the county superintendent of public welfare, who has placed the children in a licensed foster home, *held* the legal custody of the children remains in the county superintendent, though the actual custody is in the operators of the foster home.

**4. Same;    Habeas Corpus § 3—**

Where order of the juvenile court has adjudged certain children abandoned and placed their legal custody in the county superintendent of public welfare who has placed them in a licensed foster home, and thereafter the children are taken away pursuant to preliminary adoption proceedings, the Superior Court does not have original jurisdiction to entertain a petition by the operators of the home to award their custody to the operators, but the matter is determinable by the juvenile court with right of appeal to the Superior Court. G.S. 110-40.

APPEAL by petitioners from a judgment signed (after hearings in Chambers) on December 26, 1963, by his Honor, *Allen H. Gwyn, Resident Judge* of the Seventeenth Judicial District.

Notice that Willie Bethel Lovelace and wife, Willie Faulkner Lovelace, would apply "to his Honor, Allen H. Gwyn, Resident Judge of the 17th Judicial District, for an order awarding to the petitioners the care, custody, and control of Debra Carol Simpson and Johnny Simpson, minor children," was given (service accepted) to "Jule McMichael, Attorney for Elizabeth Barksdale, Superintendent of the Department of Public Welfare for Rockingham County," on October 19, 1963.

In a petition addressed to Judge Gwyn as Resident Judge, the petitioners (Lovelaces) alleged in substance, except when quoted, the following:

Debra Carol Simpson (Debra), age seven, and Johnny Simpson (Johnny), age six, "are currently in the legal custody of Elizabeth

Barksdale, Superintendent of the Department of Public Welfare for Rockingham County, North Carolina." Petitioners, citizens and residents of Rockingham County, were licensed by the Superintendent of the Department of Public Welfare of Rockingham County to operate a foster home. Under said license, the Superintendent placed Johnny, then aged fourteen months, with petitioners on May 25, 1958, and placed Debra, then aged three years, with petitioners on March 3, 1959. "(I)t was the understanding of the petitioners at this time that they would not be allowed to adopt the children." The children, when brought into the home of petitioners, were in bad health and emotionally disturbed. Petitioners treated them as their own children. As a result of five years of love and attention, the children, in August, 1963, were healthy and emotionally secure. In August, 1963, Debra and Johnny were removed from the home of petitioners by the Superintendent of Public Welfare of Rockingham County. Petitioners "at that time asked to have the privilege of adopting the children" but were informed by the Department of Public Welfare of Rockingham County "that they could not adopt the children."

Petitioners love the children and the children love petitioners. Petitioners feel that separation, after living in the home of petitioners for approximately five years, would be injurious to the health, both mental and physical, of the children. They seek the custody of the children and "the right to adopt these children and to continue to give them the love and affection and security that they have given them for approximately five years." They are fit and proper persons to have the custody of the children and "are in the process of filing a Special Proceeding for the adoption of the . . . children with the Clerk of the Superior Court for Rockingham County."

Petitioners pray "that an Order be made directing the Superintendent of Public Welfare for Rockingham County to return Debra Carol Simpson and Johnny Simpson, minor children, to the custody of your petitioners and that your petitioners be allowed to proceed with their Adoption Proceedings."

In behalf of Elizabeth A. Barksdale, *Director* (see Session Laws of 1961, Chapter 186) of the Department of Public Welfare of Rockingham County, Jule McMichael, Esquire, the County Attorney, filed (1) a motion to dismiss said petition and (2) an answer thereto. Petitioners filed (1) an answer to said motion to dismiss and (2) a reply to said answer.

The matter was heard in Chambers by Judge Gwyn on two occasions. On October 30, 1963, it was heard on respondent's motion to dismiss. No order was then entered. On November 7, 1963, it was heard

on the evidence offered by petitioners, which included the testimony of Miss Barksdale, the respondent, and the testimony of Miss Willis, a case worker. (Note: Petitioners were tendered for cross-examination but did not testify. Apparently, their verified petition was accepted and treated as evidence.)

The pleadings and uncontradicted evidence established the following facts:

On March 12, 1958, the Clerk of the Superior Court of Rockingham County, in his capacity as Juvenile Judge, upon findings that eight named Simpson children had been grossly neglected by their parents, ordered "that the said children be committed to. the Superintendent of Public Welfare to be placed in suitable homes until such time as the mother may be located and heard." Pursuant to this order, the Superintendent placed two of the children with petitioners, Johnny on May 25, 1958, and Debra on March 3, 1959.

On January 12, 1960, in a special proceeding, the said Juvenile Judge, on findings that the eight Simpson children had been abandoned by their parents, ordered "that the custody of said abandoned children . . . be and is hereby placed in the petitioner, Dorothy J. Martin, Rockingham County Superintendent of Public Welfare, or her successors in office." Pursuant to this order, the Superintendent continued the arrangement previously made with petitioners with reference to Johnny and Debra.

Under the arrangement with petitioners, the Department of Public Welfare paid $50.00 per month per child "for food and shelter" and was "responsible for medical needs, doctor, drug, dentist, clothing, whatever it might be." While the Lovelaces had the children, the Department of Public Welfare paid "(f)or room and board — $5,724.76; for medical care — $108.46; for clothing — $355.61; for doctors — $107.00." The amount of all payments was $6,295.83.

After January 12, 1960, to wit, in June or July of 1963, a Mr. Brown, cousin of Bethel Lovelace (male petitioner), requested permission to adopt Johnny and Debra. The children were taken to Virginia where Brown lived. They were gone from Rockingham County about eight weeks. During this period the Lovelaces "were hearing from them all along." The evidence is unclear as to further details concerning this incident.

There is no evidence as to specific further efforts, if any, of the Department of Public Welfare with reference to adoption until August, 1963. In accordance with the State policy, the Department of Public Welfare of Rockingham County prepared a descriptive summary of

children under its supervision "in need of adoption placement." The State Department sent such summaries to the county offices. In 1963, in response to such a summary concerning Johnny and Debra, the Director of an unidentified county (not in the Seventeenth Judicial District) advised that a childless couple in such county wished to adopt two older children. Thereafter, the interested husband and wife came to Rockingham County to see Johnny and Debra. The children, with the cooperation of the Lovelaces, were taken to the office of the Rockingham Department of Public Welfare and visited with the prospective adoptive parents an hour or so in "a small play area." An "inter-county agreement," with approval of the State Department, was signed. Miss Barksdale testified: "Whenever a child is moved from one county to another there is an agreement signed by both counties whereby the county accepting the child accepts the responsibility and assumes supervision."

The Lovelaces have three children of their own, all a few years older than Johnny and Debra.

The Lovelaces have fully discharged their responsibilities as foster parents. They accepted Johnny and Debra as members of their family and treated them with loving care. The children were healthy, happy and well adjusted. Prior to their removal for adoption in August of 1963, the Lovelaces were the only parents the children had ever known.

Johnny and Debra were not present before Judge Gwyn and were not in the Seventeenth Judicial District at the time of said hearings. There is no evidence: (1) as to the identity of the county in which the children now reside; (2) as to the names of the prospective adoptive parents; or (3) as to the present status of the adoption proceedings.

On December 26, 1963, Judge Gwyn signed a judgment which, after recitals, provides:

"The Court being of the opinion finds as a fact:

"1. That the Court has jurisdiction in this matter even though it is not shown that the minor children are residing in the 17th Judicial District of North Carolina at the present time.

"2. That the Court cannot find from the evidence introduced by the petitioners that the interest of said minor children would best be served by placing said children in the home of the petitioners for adoption instead of the undisclosed home of the adoptive parents presently in the process of adopting said children.

"3. That the State and County Public Welfare Department's policy of not disclosing the whereabouts and names of adoptive

parents and children being adopted is a sound policy which should not be disturbed by the courts.

"4.  That the petitioners are not the natural parents or guardians of said children and, therefore, have no legal right to the custody of said children.

"IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the petitioners' request for custody of said minor children be and the same is hereby denied, and it is further ordered that this action be dismissed and that the petitioners be taxed with the cost."

Petitioners excepted and appealed.

*D. Leon Moore* for petitioner appellants.
*McMichael, Griffin & Rankin* for respondent appellee.

BOBBITT, J.  Our first question is whether Judge Gwyn had original jurisdiction to hear and pass upon the questions presented by the petition.

The only procedure for the adoption of minors is that prescribed by G.S. Chapter 48. "Adoption shall be by a special proceeding before the clerk of the superior court." G.S. 48-12. A superior court judge has no jurisdiction in adoption proceedings except upon appeal from the clerk. See G.S. 48-21 and G.S. 48-27. There is nothing in the evidence concerning an adoption proceeding, if any, filed by petitioners except *the allegation* that "your petitioners are in the process of filing a Special Proceeding for the adoption of the . . . children with the Clerk of the Superior Court for Rockingham County." Clearly, Judge Gwyn had no jurisdiction to make an order relating to any adoption proceeding.

Did Judge Gwyn have original jurisdiction to determine whether custody of Debra and Johnny should be awarded to petitioners?

The petition was not filed in any pending civil action or special proceeding. It was presented directly to Judge Gwyn as Resident Judge some two months after the children had been removed to another county and placed in the custody of prospective adoptive parents in accordance with an interlocutory order in an adoption proceeding.

It does not appear that Debra and Johnny were subject to adoption until the order of January 12, 1960, in which they were adjudged *abandoned* children. G.S. 48-2(3a) ; G.S. 110-28 *et seq.* Prior thereto, the order of March 12, 1958, made provision for immediate (temporary) custody. G.S. 110-27.

Under G.S. 110-21, the clerk of the superior court, in his capacity as Juvenile Judge, has exclusive jurisdiction of an *abandoned* child

under sixteen years of age; and, "(w)hen jurisdiction has been obtain-ed in the case of any child, unless a court order shall be issued to the contrary, or unless the child be committed to an institution support-ed and controlled by the State, it shall continue for the purposes of this article during the minority of the child."

It is noteworthy that the Juvenile Court, under G.S. 110-21, has exclusive original jurisdiction of a child under sixteen years of age "whose custody is subject to controversy" in all cases except those in which the superior court is given jurisdiction by G.S. 17-39 or G.S. 50-13. *In re Melton,* 237 N.C. 386, 74 S.E. 2d 926; *Phipps v. Vannoy,* 229 N.C. 629, 50 S.E. 2d 906; *In re Prevatt,* 223 N.C. 833, 28 S.E. 2d 564.

By his order of January 12, 1960, the Juvenile Judge placed the custody of Debra and Johnny in the then Superintendent (now Direc-tor, see Session Laws of 1961, Chapter 186) of Public Welfare of Rock-ingham County and her successors in office. The record does not indi-cate there were any further proceedings or orders in the Juvenile Court.

Petitioners allege that the children are in the legal custody of the Director of the Department of Public Welfare of Rockingham County. It is noted that respondent denies this allegation. It is respondent's con-tention that the custody of Debra and Johnny was properly transferred (incident to the adoption proceedings) to the Department of Public Welfare of an unidentified county, which county, under the inter-coun-ty agreement, has assumed responsibility for supervision of the chil-dren. It is noted that one of the statutory powers and duties of a County Director of Public Welfare is "(t)o investigate cases for adop-tion and supervise placements for adoption." G.S. 108-14(10).

To support their contention, petitioners cite *In re Blalock,* 233 N.C. 493, 64 S.E. 2d 848, 25 A.L.R. 2d 818. In that case, the Domestic Re-lations Court, in which was vested Juvenile Court jurisdiction, made an order relating to a dependent child. Thereafter, *the mother* of such child made a motion *before the said Domestic Relations Court* for a modification of said order. The motion was contested by those who had actual custody. The matter was heard in the superior court *on appeal* from the order of the Domestic Relations Court.

The basis for petitioners' allegation and contention is the order en-tered January 12, 1960, by the Juvenile Judge. Whether, under this order, the Director of Public Welfare of Rockingham County was au-thorized to transfer the custody of the children to the Director of Pub-lic Welfare of another county, and if not, whether the Juvenile Court should authorize such transfer, are questions determinable in the first instance in the Juvenile Court. The superior court has jurisdiction to hear appeals from orders and judgments of the Juvenile Court. G.S. 110-40.

In our view, Judge Gwyn did not have original jurisdiction to determine whether custody of Debra and Johnny should be awarded to petitioners.

With reference to petitioners' *legal* status: Petitioners are not the natural parents of Debra and Johnny. During the period petitioners had actual custody of the children, the legal right to custody was in the Director of Public Welfare of Rockingham County; and petitioners' actual custody was under authority granted by said Director pursuant to the arrangement for their care. Understandably, petitioners, on account of their long and happy association with the children, are deeply concerned for their welfare. Without passing upon petitioners' legal standing, if any, to proceed by motion in the Juvenile Court, it would be appropriate for the Juvenile Court to hear any matters brought to its attention bearing upon what occurred subsequent to its order of January 12, 1960, with reference to the custody and welfare of the children.

Although compensated to the extent indicated, it seems appropriate to say that the care and affection provided by petitioners to Debra and Johnny deserve the highest commendation.

We express no opinion as to whether the Director of Public Welfare of Rockingham County acted legally or wisely in removing the children from petititoners' custody and placing them under the supervision of the Department of Public Welfare of an unidentified county. Decision on this appeal is based solely on the ground Judge Gwyn did not have original jurisdiction to hear and pass upon the questions presented by the petition.

For lack of jurisdiction, the judgment from which petitioners appeal is vacated.

Judgment vacated.

SHARP, J., took no part in the consideration or decision of this case.