IN RE ADOPTION OF THOMAS CAMERON DAUGHTRIDGE

No. 747SC1055

(Filed 19 March 1975)

1. Adoption § 2— consent for adoption required

The consent of respondent department of social services to the adoption sought by petitioners is required by virtue of G.S. 48-9(b).

2. Adoption § 2— consent of board of social services — reasonableness of withholding consent

The General Assembly, in furtherance of the State's desire to protect the welfare of dependent children, has provided for the consent

of the Board of Social Services or person appointed by the court to consent to their adoption, and that consent may not be unreasonably and unjustly withheld; if the court shall find that a failure to grant the petition for adoption would be inimical to the best interests and welfare of the child, it may proceed as if the consent which it finds ought to have been given has been given.

**3. Adoption § 2— failure of department of social services to give consent — reasonableness**

The trial court in an adoption proceeding properly determined that the withholding of consent by respondent department of social services was not unjust and unreasonable and was in the best interests of the child where the evidence tended to show that petitioners lived in the same community as the child's natural mother, the circumstances indicated a real possibility that the natural mother or other members of her family might successfully pierce the veil of confidentiality which should be maintained for the best interests of the child, and respondent had made no investigation as to petitioners but as to prospective adoptive parents in another county, a full investigation had been made.

APPEAL by petitioners from *Webb, Judge.* Judgment entered 30 October 1974 in Superior Court, EDGECOMBE County. Heard in the Court of Appeals 21 February 1975.

This action is an adoption proceeding brought by Gordie Justice Daughtridge and his wife, Vicki Leonard Daughtridge (hereinafter referred as "petitioners") for the adoption of a baby whom they desire to name Thomas Cameron Daughtridge.

On 27 September 1973, the Edgecombe County Department of Social Services (hereinafter called "respondent") placed the child with the petitioners, who were paid foster parents, for the purpose of their providing foster care only. The child has remained with the petitioners continuously since that time. On 19 August 1974, the child's natural mother executed a Parent's Release, Surrender and Consent to Adoption in favor of respondent, and this release was accepted for respondent by its Director. The consent of the child's father is not required under the circumstances of this case, and the period within which the mother could revoke her consent had expired at the time the adoption proceeding was brought. Respondent refused to consent to the adoption, and petitioners secured an order making respondent a party. Petitioners then moved that the respondent be required to appear at a hearing for the purpose of having the court determine whether consent had been withheld without proper justification. The Clerk allowed the motion and entered an order requiring respondent to appear before him in order that he might determine whether the respondent had authority

In re Daughtridge

to withhold consent, and if so, whether the refusal to give consent was unwarranted and unjust.

Respondent filed a response to the petition for adoption in which it averred that it did not deny that petitioners, insofar as foster care was concerned, are fit persons to have the care, custody, supervision and training of the child and did not deny that petitioners are financially able to provide for the child. Respondent, by way of further response, averred that it placed the child with petitioners for the purpose of providing foster care only; that the mother had consented to adoption and the consent was irrevocable; that the father's consent was not necessary; that the petition was filed without the consent of respondent as required by G.S. 48-9 (b) ; that respondent had authority to withhold consent and that its refusal was warranted, just, and in the best interests of the child, the petitioners, and the mother of the child for the following reasons: there is a strong likelihood of interference with the orderly and proper adjustment of the child in the proposed adoptive home by reason of "the lack of confidentiality which exists with regard to the mutual knowledge of who the natural mother and proposed adoptive parents are or the ease by which such confidentiality could be destroyed", the fact that petitioners have not been provided with background information with respect to the child, the fact that no investigation had been made of petitioners' suitability as adoptive parents, the fact that just a few days prior to the filing of the petition, petitioners became the natural parents of a baby girl born prematurely and neither petitioners nor respondent had had time properly to evaluate or determine what effect, if any, the birth of this child to petitioners might have on the suitability of the adoption sought by petitioners, the fact that adoptive parents in a distant county had been approved subject only to an opportunity to see the child and that respondent is of the opinion that it would be in the best interests of the child for him to be adopted by parents living in a distant county. Respondent further asked that the matter be transferred to the civil issue docket for trial of issues at the next ensuing term of Superior Court in accordance with G.S. 1-273 upon the premise that whether respondent has the authority to withhold its consent and, if so, whether the refusal is warranted and just raises issues of law and fact.

The Clerk refused to transfer the matter to the civil issue docket but heard it himself and entered an order in which he

made 32 findings of fact and 7 conclusions of law resulting in his concluding that respondent's withholding its consent was unreasonable, not justified, and that the best interests of the child required its placement with petitioners. He ordered "[t]hat the consent of respondent to the petition for adoption filed in this cause be, and the same is hereby dispensed with by this court."

Respondent appealed to the Superior Court. The Court, with two exceptions, adopted the findings of the Clerk. Upon the findings, the Court made the following conclusions of law:

"1. That the welfare of the minor child the subject of this cause is the primary concern of this court.

2. That the consent of the respondent to the adoption sought by the petitioners is required by virtue of G.S. 48-9(b) unless otherwise ordered by a court of competent jurisdiction as provided for in G.S. 48-9.1(1).

3. That the respondent has wide latitude and discretion concerning whether it should give or withhold its consent to adoption and a court of competent jurisdiction should not dispense with said consent or permit an adoption proceeding to continue without said consent unless it clearly appears that the withholding of consent is unreasonable.

4. That the respondent has reasonably withheld its consent to the proposed adoption by basing such refusal on the lack of confidentiality surrounding the proposed placement of said child for adoption with the petitioners.

5. That the respondent has in all respects properly withheld its consent to the adoption filed herein and its refusal has not been shown to be clearly unreasonable but, on the contrary, is based upon reason and the best interest of all parties concerned.

6. That the welfare of said minor child will be best served by dismissing the Petition for Adoption filed herein."

The court ordered that the order entered by the Clerk be reversed and the petition for adoption be dismissed. Petitioners appealed.

*Cleveland P. Cherry, by Will H. Lassiter, III, for petitioner appellants.*

*Taylor, Brinson & Aycock, by William W. Aycock, Jr., for respondent appellee.*

MORRIS, Judge.

The adoption of children is purely a statutory procedure and "[t]he only procedure for the adoption of minors is that prescribed by G.S. Chapter 48. 'Adoption shall be by a special proceeding before the clerk of the superior court.' G.S. 48-12. A superior court judge has no jurisdiction in adoption proceedings except upon appeal from the clerk. See G.S. 48-21 and G.S. 48-27." *In Re Custody of Simpson,* 262 N.C. 206, 210, 136 S.E. 2d 647 (1964).

Appellant raises certain procedural questions on appeal. Among other things, he contends that the Superior Court could only hear the matter in its appellate capacity and erred in considering the matter *de novo.* The parties concede that respondent did not except to any particular finding of fact on its appeal to the Superior Court but entered only a general exception. The record contains a stipulation by the parties that "at the time this cause was heard before Judge John Webb, counsel for each of the parties stipulated orally in open court to Judge Webb that the findings of fact set forth in paragraphs 1 through 18, paragraph 20 and paragraphs 22 through 32 of the order of Don Gilliam, Jr., dated October 16, 1974, were agreed to by the parties and were not in dispute and could be accepted by the court as fully supported by the evidence received at the hearing before Don Gilliam, Jr., Clerk of Superior Court of Edgecombe County." As to findings of fact 19 and 21, Judge Webb heard evidence in the form of the sworn testimony of Claudia Edwards, Director of the Edgecombe County Department of Social Services. The record contains no objection to this testimony, nor do petitioners except to the modified findings of fact made by the court. The net effect is that the facts were agreed facts and the court reached a different conclusion as a matter of law. In this procedure, we find no error. *In Re Estate of Moore,* 25 N.C. App. 36, 212 S.E. 2d 184 (1975). See also *In Re Holder,* 218 N.C. 136, 10 S.E. 2d 620 (1940), where the hearing in superior court on appeal from the clerk was, by agreement of counsel, *de novo* and upon the record and the evidence taken be-

fore the clerk. It thus appears that whether the court heard the matter *de novo* or in its appellate capacity is not determinative of this appeal. The question whether the Clerk should have transferred the cause to the civil issue docket for trial in the Superior Court is presented in appellee's brief. True, respondent's answer to the petition requested this, because the answer raised issues of law and of fact. See G.S. 1-273. However, any issues of fact were resolved by agreement of the parties, and the question, while an intriguing one, is not raised by appellant and is not before us on this appeal.

The question before us is whether the respondent may withhold its consent to an adoption and, if so, was the refusal in this case warranted and in the best interests of the child.

An analysis of the pertinent adoption statutes and such case law as is available is necessary. *In Re Adoption of Hoose,* 243 N.C. 589, 593, 594, 91 S.E. 2d 555 (1956), Justice Denny, later Chief Justice, said: "Consent is essential to an order of adoption.", and further:

"Under our statute G.S. 48-7, except as provided in G.S. 48-5 and G.S. 48-6, before a child can be adopted, the written consent of the parents, or surviving parent, or guardian of the person of the child must be obtained."

G.S. 48-5 provides for procedure where a child has been found to be an abandoned child by a court of competent jurisdiction, and G.S. 48-6 makes provisions for situations in which the consent of the father is not necessary.

G.S. 48-9 is entitled "When consent may be given by persons other than parents". Section (b) thereof provides:

"The surrender of the child and consent for the child to be adopted given by the parent or guardian of the person to the director of public welfare or to the licensed child placing agency *shall be filed with the petition along with the consent of the director of public welfare or of the executive head of the agency to the adoption prayed for in the petition.*" (Emphasis supplied.)

Section (c) provides that if the child has been surrendered to an agency operating in another state which is authorized by that state to place children for adoption, the written consent of that agency shall be sufficient. Section (d) provides that if one or

both parents has or have been found incompetent to give valid consent because one has or both have been adjudged mentally incompetent, the court may appoint a person or the director of social services to act as next friend for the child *"to give or withhold such consent"*. (Emphasis supplied.)

[1] It seems clear that the General Assembly recognizes and follows the court's admonition that consent is essential to an order of adoption. It also seems clear that the General Assembly recognizes that there are cases in which consent might be and some times should be withheld by the person or agency qualified to give consent. This is further evidenced by the provisions of G.S. 48-9.1(1) as follows:

> *"The county department of social services* which the director represents, or the child-placing agency, to whom surrender and consent has been given, *shall have legal custody of the child and the rights of the consenting parties,* except inheritance rights, until entry of the interlocutory decree provided for in G.S. 48-17, or until the final order of adoption is entered if the interlocutory decree is waived by the court in accordance with G.S. 48-21, or until consent is revoked within the time permitted by law, *or unless otherwise ordered by a court of competent jurisdiction. . . . "*
> (Emphasis supplied.)

We think the pertinent sections of Chapter 48 support and require the conclusions of Judge Webb "that the consent of the respondent to the adoption sought by petitioners is required by virtue of G.S. 48-9(b) unless otherwise ordered by a court of competent jurisdiction as provided for in G.S. 48-9.1(1)" and we note that petitioners do not except to this conclusion.

Should the court find that the agency has unreasonably withheld its consent, we think the court has the right to order that the adoption proceed without the written consent of the agency—resulting, as a practical matter, in the adoption of the child proceeding with the consent of the court substituted for the consent of the agency. Or, as the Minnesota Court put it, "proceeding as if the consent which ought to have been given had been given." *In re McKenzie,* 197 Minn. 234, 266 N.W. 746, 748 (1936). That case is similar in many respects to the one before us. There the petitioners, as foster parents for the Minnesota Board of Control, had been given the care of the child when it was four months old and had kept it for three

---

---

years. They were non-Catholic, and the child's parents were Catholic, but petitioners had agreed to rear the child in the Catholic faith and had faithfully adhered to that agreement. The child's mother had been confined in the State Hospital for the Feeble Minded since shortly after the child's birth and the father, who was unable to care for the child, had petitioned the juvenile court of St. Louis County to commit it to the care of the State. There was no dispute about the ability of petitioners to care for the child nor the fact that they were of good moral character. Nevertheless, the board of control withheld its consent to the adoption by the petitioners. The sole reason therefor was that it had a rule prohibiting the adoption of a child by parties of a different religious faith than that of the child's natural parents. The court noted that the consent of parents, not otherwise incapacitated, must be obtained before a valid adoption of their child could be effected, and, where the parents are incapacitated, the consent of a guardian must be obtained. Where a child has been placed in the custody and care of the State, the inherent rights of parenthood are not transferred, said the court; but the welfare of the child is the chief concern of the State. Therefore, the court concluded that the board could not withhold its consent and thereby defeat the petition for adoption when the best interests of the child would compel a finding that a failure to grant the petition for adoption would be inimical to the best interests of the child. "Jurisdiction is complete in the court, and it may proceed with the sole view to the best interests of the child. It need not dismiss on motion of the board, and it may disregard the board's refusal to consent in case that refusal is unreasonable." *In re McKenzie, supra,* at 747. The court found that the consent had been unreasonably withheld and reversed the judgment of the District Court denying the petition.

[2]   Our General Assembly, in furtherance of the State's desire to protect the welfare of dependent children, has provided for the consent of the Board of Social Services or person appointed by the court to consent to its adoption. The consent of those in custody of the child under statutory provisions, unlike the absolute required consent of competent natural parents, is simply an additional safeguard to the welfare and best interests of the child. We agree with the Minnesota court that that consent may not be unreasonably and unjustly withheld. If the court shall find that a failure to grant the petition for adoption would be inimical to the best interests and welfare of the child, it may

In re Daughtridge

proceed as if the consent which it finds ought to have been given has been given.

[3]  Left for determination then, is whether the withholding of consent by respondent was unjust and unreasonable and not in the best interests of the child. We do not think so. The undisputed findings of fact show that the child's natural mother lives and works in the same city as do petitioners, as do the natural mother's father, and stepmother; that the petitioners know the name of the child given him by his natural mother; that it is an unusual name in that there are very few other families with that name in the city; that the natural mother had had the child with her for two periods of several months' duration prior to 27 September 1973, when he was placed with petitioners; that although the parents of the natural mother, who were distressed over the birth of an illegitimate child, continually encouraged the natural mother to allow the child to be adopted, the natural mother was firm in her desire to keep the child and, on 15 August 1974, had the child baptized in a church of her choice; that though the child was born on 12 September 1972, the natural mother did not give consent to adoption until 19 August 1974; that during the months that petitioners had the child in their home, the natural mother and maternal grandparents of the child visited with the child in the office of respondent; that they waited in respondent's office while a representative went to get the child which took only a short while; that the decision of the natural mother to give the child up for adoption was contrary to all her previous actions and statements; that the respondent has at all times maintained confidentiality as to natural parents' names with prospective adoptive parents in another county with whom respondent has been in contact; that the adoption by these prospective parents has the tentative approval of both respondent and the prospective parents; that respondent has made no investigation as to petitioners but as to the prospective adoptive parents in another county, full investigation has been made and detailed background information about the child has been disclosed to them; that although it is against the policy of respondent to place children for adoption with their foster parents, this has been done in a few cases where the children were older and knew their natural parents and other members of their family.

We think that the best interests of the child would not be served by placing him in a home in the same community

where his natural mother lives under circumstances which indicate a real possibility that the natural mother or other members of her family might successfully pierce the veil of confidentiality which should be maintained for the best interests of the child. We think the facts clearly indicate that the respondent's fear or lack of confidentiality is well founded and justifies its withholding of consent, because of the strong likelihood of interference with the orderly and proper adjustment of the child in the home of petitioners.

For the reasons stated herein, we conclude that the order entered by Judge Webb should be and is

Affirmed.

Judges BRITT and ARNOLD concur.