The sole issue presented by this appeal is whether the Department of Pensions and Security arbitrarily and unreasonably refused to consent to the adoption of a young child by the appellees, Mr. and Mrs. Terry T. Whitney.
The record in this matter discloses that the child in question, Tony Roberts, was born in 1974. In June of 1976 the Mobile County Circuit Court terminated all legal rights of the natural parents with respect to Tony and conferred upon the Department of Pensions and Security (hereinafter referred to as DPS) the legal guardianship and permanent custody of the child. The court also granted DPS the power to place the child with a family so he could be adopted. Finally, DPS was given the specific authority by the court to consent to any subsequent adoption.
In July of 1975 the child was placed in Mr. and Mrs. Whitney's home as a foster child. The Whitneys had entered into a written agreement with DPS to be boarding home foster parents for wards of DPS on a temporary basis. Tony Roberts was placed in the Whitneys' care pursuant to this agreement and remained in their care for a period of about thirteen months. During the time Tony was in the Whitneys' temporary care, DPS was in the process of obtaining final authority from the circuit court for the disposition of Tony's custody. Upon learning that the Whitneys had contacted the natural mother in order to obtain her consent so that they might adopt Tony, DPS removed Tony from the Whitneys' care. Within two months of this occurrence the Whitneys filed a petition in the Probate Court of Mobile County seeking to adopt Tony Roberts. DPS thereupon moved the probate court to dismiss the Whitneys' petition. This motion was based on the conclusion reached by DPS that the welfare and best interests of Tony Roberts would suffer if the Whitneys were permitted to adopt him.
On July 26, 1977 the probate court issued an interlocutory order granting Mr. and Mrs. Whitney's petition of adoption. Following that action by the probate court, DPS filed a writ of mandamus with this court seeking to have the probate court's order set aside.
In Matter of Roberts, Ala.Civ.App., 349 So.2d 1170 (1977), we issued an opinion provisionally granting the writ of mandamus. In our opinion we said that:
 "The D.P.S. takes the position that their consent to an adoption is a jurisdictional requirement when a juvenile court, or court of like jurisdiction, has terminated parental rights in the natural parents and has granted guardianship and permanent custody of the child to D.P.S. The department further contends that a motion to dismiss an adoption petition should be granted when D.P.S. does not consent to an adoption.
 "The respondents, through able counsel, argue that an administrative agency (i.e., D.P.S.) cannot arbitrarily prevent an adoption by the simple withholding of its consent.
 "The initial question for answer by this court is whether the consent of D.P.S. is a necessary prerequisite to the adoption of a child committed to its care. . . .
. . . . .
 "The facts, as set out above, show that D.P.S. is the proper party to consent since legal guardianship has been placed with them. The natural parents had their parental rights permanently terminated by an order of the Circuit Court of Mobile County and, therefore, they are powerless to consent.
 "Thus, it can be seen that the giving of consent by D.P.S. is a prerequisite to the probate court's consideration of the subject matter.
 "The initial question having been answered in the affirmative, we now proceed to ascertain whether D.P.S. can arbitrarily withhold its consent to the *Page 812 
adoption of a child that has been committed to its custody and care. We find that it cannot arbitrarily withhold its consent.
. . . . .
 ". . . Whether the consent of the D.P.S. is being withheld unreasonably or arbitrarily is a question of fact. The burden of proof is on the party asserting that the consent of D.P.S. is being withheld arbitrarily or unreasonably. And, the probate court must decide, after a hearing, whether D.P.S. is, in fact, arbitrarily withholding its consent to the adoption. See Straszewicz v. Gallman, Ala.Civ.App., 342 So.2d 1322 (1977).
 "Summarizing, the consent required of the D.P.S. is jurisdictional, so that on its refusal to grant such consent, the court is without power to issue an adoption order unless the agency's action is found to be arbitrary and unreasonable. . . .
. . . . .
 ". . . For this reason, we deem it necessary to return this matter to the probate court so that the question of whether D.P.S. has arbitrarily withheld its consent to the adoption can be properly considered by that court at a hearing held for that purpose."
An ore tenus hearing was subsequently held in compliance with our decision and at the conclusion of the evidentiary phase of the hearing, the probate court determined that DPS had acted in an arbitrary and unreasonable manner by withholding its consent to the adoption of Tony Roberts by the Whitneys.
A finding by a probate court based on the examination of witnesses ore tenus is presumed to be correct and will not be disturbed on appeal unless such finding is plainly and palpably erroneous. However, the burden of proving that DPS arbitrarily and unreasonably refused to consent to an adoption is on the party who is so contending. After a careful review of the facts in the instant case we conclude that the Whitneys failed to sustain the burden of proving that DPS arbitrarily and unreasonably refused to consent to the adoption by them of Tony Roberts; therefore, we hold that the probate court's judgment is plainly and palpably erroneous.
DPS is an administrative agency of this state. Its duties include the care and protection of dependent children. And pursuant to the performance of such duties, DPS may consent or refuse to consent to the adoption of a child committed to its care. We said in English v. Macon, 46 Ala. App. 81,238 So.2d 733 (1970), that ". . . the Department . . . became in locoparentis to the child and acquired all of the rights and had thrust upon it all of the responsibilities of natural parents." However, in exercising its authority to grant or withhold its consent to an adoption, DPS must, in every instance, focus its paramount concern on the welfare and best interests of the child. Moreover, DPS cannot arbitrarily or unreasonably prevent an adoption which may be in the best interests of a child simply by withholding its consent. Matter of Roberts, supra.
In the present case the probate court found that DPS had arbitrarily and unreasonably withheld its consent to the adoption. However, a determination by an administrative agency is not "arbitrary" or "unreasonable" where there is a reasonable justification for its decision or where its determination is founded upon adequate principles or fixed standards. 3A Words and Phrases, Arbitrary 565. Cf. Crabtree v.City of Birmingham, 292 Ala. 684, 299 So.2d 282 (1974). The record before this court reveals that there existed a number of reasons which supported DPS's refusal to permit the Whitneys to adopt Tony Roberts. Consequently, we believe the probate court incorrectly held that DPS had "arbitrarily" or "unreasonably" withheld its consent to the adoption of the child, and therefore reverse.
While the Whitneys would have been suitable as adoptive parents in certain instances, the presence of peculiar circumstances in this particular case suggests that the best interests of Tony Roberts would not be served by allowing them to adopt him. *Page 813 
At trial employees of DPS testified that the agency diligently tries to place children in homes where the prospective parents have no knowledge of the identity of the child's natural parents. And although DPS occasionally allows exceptions to this rule, our examination of the record does not reveal any instance where the relationship between the natural parents and the prospective adoptive parents was as substantial and potentially injurious to the child's welfare as the one which existed between the Whitneys and Tony Roberts' natural mother. Not only did the Whitneys know the natural mother, they contacted her (or her family) on several occasions, and in one instance provided her with financial aid. Moreover, both the Whitneys and the child's natural mother reside in Mobile in contravention to general DPS policy that the adoptive family should live in a locality where there is reasonable assurance that the child cannot be identified or interfered with by the natural parents.[1] Department of Child Welfare v. Jarboe,464 S.W.2d 287 (Ky. 1971); In re Adoption of Daughtridge,25 N.C. App. 141, 212 S.E.2d 519 (1975).
In addition, Tony Roberts has not been in the foster home of the Whitneys for over eighteen months. He has been placed in a prospective adoptive home pursuant to the directive of the Circuit Court of Mobile County, and his new place of residence is located outside of Mobile County. DPS has approved the persons who now have Tony as adoptive parents. And according to the evidence, Tony is happy and well adjusted in his new environment. Department of Child Welfare v. Jarboe, supra.
Finally, it should be remembered that Tony was never placed in the foster home of the Whitneys for purposes of adoption. The Whitneys were never considered by DPS to be anything other than hired foster parents. A number of foster children had resided in the Whitneys' home prior to Tony, and because of their relationship and dealings with DPS we may presume that the Whitneys were aware of DPS's policy regarding confidentiality between a child's natural parents and those persons selected by DPS to provide temporary care of the child. Despite this fact, the Whitneys actively sought to discover the identity of Tony's natural parents while the child was in their (the Whitneys) custody. Furthermore, after ascertaining the identity of both the natural mother and father of the child, the Whitneys contacted both individuals by telephone and by personal visits. The record, however, is unclear as to whether these contacts occurred before or after Tony had been removed from the Whitneys' foster care. Nonetheless, as a result of their discussions and visits with Tony's natural parents, the Whitneys eventually obtained the formers' consent to adopt Tony even though neither individual had any power to consent to the adoption of their child due to the fact that their parental rights had been terminated by court order.
In addition to the activities described above, Mrs. Whitney admitted at trial that when Tony was removed by DPS from the Whitney home to another foster home, she (Mrs. Whitney) had a neighbor follow the DPS employee and Tony in an effort to learn where he was to be placed. On another occasion, Mrs. Whitney learned that Tony had been transferred to yet another foster home when her nephew reported that he had seen Tony at the grocery store where he (the nephew) worked. The nephew copied the address of Tony's foster home from a check used by the little boy's new foster mother to pay for groceries and subsequently gave the address to his wife. The nephew's wife then gave the address of the child's new foster home to Mrs. Whitney. *Page 814 
We note these events because we believe that Mrs. Whitney's conduct, while understandable in view of her desire to adopt Tony, violated the nature of her relationship with DPS. The Whitneys entered into an agreement with DPS to provide a foster home for the child. They were paid for their services at public expense. And at least implicit in terms of the arrangement which they had with DPS was the Whitneys' duty not to interfere with any appropriate administrative action by DPS. As the agency of the State charged with protecting the welfare and best interests of dependent children, the Department of Pensions and Security has the discretion to choose foster parents as well as adoptive parents. Accordingly, interested persons such as the Whitneys may not unilaterally interfere or obstruct the manner in which the professionals who are in the pay of the State exercise their discretion in the placement of their wards. We are of the opinion that Mrs. Whitney's actions in this case, while falling short of actual interference with DPS, were unwarranted and when considered with additional factors, constituted a valid basis upon which DPS could conclude that the best interests of the child would not be enhanced by placing the child with the Whitneys for adoption.
We are persuaded that the facts in this case strongly warranted the conclusion that there existed reasonable justification for the refusal of DPS to consent to the adoption of Tony Roberts by the Whitneys. Specifically, the need for maintaining confidentiality between the natural and adoptive parents, the policy of taking steps necessary to prevent interference with the child's adjustment to its adoptive environment, and the fact that the child has long since been placed in another home for adoption and has become accustomed to that home, certainly indicate that DPS did not arbitrarily or unreasonably withhold its consent to the adoption in question. Department of Child Welfare v. Jarboe supra;Department of Human Resources v. Basham, 540 S.W.2d 6 (Ky. 1976); In re Adoption of Daughtridge supra.
In the instant case, the Whitneys know and have associated with the child's natural parents. Likewise, Mrs. Whitney has sought to interfere with efforts by DPS to provide for the welfare of the child and there exists a very real possibility of interference by the natural parents if the child is adopted by Mr. and Mrs. Whitney. Finally, the child is happy in his present home and DPS has authorized his adoption by the family with which he now lives. Furthermore, it is highly unlikely that the child remembers the Whitneys due to the fact that it has been almost two years since the child was last with the Whitneys. To return the child to the Whitneys' custody would force him to make another adjustment, creating a situation that surely would not be in his best interests. Hence, we believe that DPS correctly decided not to consent to the adoption of this child by the Whitneys. Consequently, we hold that the probate court improperly concluded that the facts of this case warranted a finding that DPS had acted arbitrarily or unreasonably in withholding its consent to the adoption of Tony Roberts. See State Department of Pensions and Security v. Hall,57 Ala. App. 290, 328 So.2d 295 (1976). Therefore, we reverse the judgment of the probate court holding that DPS had arbitrarily refused its consent to the adoption of the child, Tony Roberts, by the Whitneys, and hereby render the judgment that the probate court should have rendered, i.e. that there having been no consent by the legal custodian to the adoption of the child, the probate court was without jurisdiction to hear and decide the adoption request of the Whitneys.
REVERSED AND RENDERED.
WRIGHT, P.J., and HOLMES, J., concur. *Page 815 
[1] The DPS policy with regard to confidentiality and geographic location is premised in part on the standards promulgated by the Child Welfare League of America in child adoption cases. (Pamphlet entitled Child Welfare League of America Standards for Adoption Services, published 1958.) Although a court is not absolutely bound by these standards, they nevertheless offer general information, as well as some specifics, which may be of aid to a judge in the handling of a particular adoption. In reAdoption of Reinius, 55 Wn.2d 117, 346 P.2d 672 (1959).