JUSTICE TRIEWEILER
dissenting.
I dissent from the opinion of the majority. The issue in this case is not who may place Baby Girl W for adoption. Catholic Social Services for Montana (hereinafter CSSM) clearly has that authority and intends to exercise it. The issue is whether, in the exercise of its placement authority, CSSM can arbitrarily refuse to consider the foster parents, even if to do so would be contrary to Baby Girl W’s best interests. I believe this situation is analogous to statutes which require agency consent to adoption. There is considerable authority that such consent cannot be arbitrarily withheld.
In In re McKenzie (Minn. 1936), 266 N.W. 746, a juvenile located in Minnesota had been placed by court order under the care of the Minnesota Board of Control. That board placed the same child with foster parents where the child remained for over three years. After the child was removed from the foster parents’home to an orphanage, they petitioned for adoption. The board refused based on a religious difference between the child and the proposed adoptive parents.
Minnesota had a statute which prohibited adoption without the consent of the parents, the guardian, or the State Board of Control. The Minnesota Supreme Court was called upon to decide whether consent could be unreasonably withheld when an adoption appeared *374 to be in the child’s best interests. It concluded that it could not. In discussing the board’s rule on religious compatibility, the Minnesota Supreme Court stated:
In so far as the operation of the rule is not inimical to the best interests of the child, the board may be justified in not consenting to the placing of the children with adoptive parents of a different faith, but to blindly follow such a rule after placing the child for support with a well-qualified family for a period so protracted that a strong affection for the child is permitted to develop is, in our view, unreasonable. The affection of foster or adoptive parents is the child’s greatest asset in life. It usually means a good education and a start in life. Where, as here found by the trial court, it is accompanied by character building surroundings and complete religious tolerance, and the chances of matching the surroundings and affection elsewhere are slight, the board’s action becomes so unreasonable as to fall within the definition of caprice.
McKenzie, 266 N.W. at 748.
In the case of In re Adoption of Daughtridge (N.C. 1975), 212 S.E.2d 519, the Court of Appeals of North Carolina was called upon to decide whether a county department of social services could withhold consent to adoption under similar circumstances. That court held:
We agree with the Minnesota court that that consent may not be unreasonably and unjustly withheld. If the court shall find that a failure to grant the petition for adoption would be inimical to the best interests and welfare of the child, it may proceed as if the consent which it finds ought to have been given has been given.
Daughtridge, 212 S.E.2d at 524.
Other courts have arrived at similar conclusions. See State ex rel. Dept. of Institutions Social and Rehabilitative Services v. Griffis (Okla. 1975), 545 P.2d 763; Oxendine v. Catawba County Department of Social Services (N.C. 1981), 281 S.E.2d 370.
This Court has previously indicated that it is in accord with those decisions. Frederick v. District Court (1946), 119 Mont. 143, 173 P.2d 626.
The effect of § 40-8-108, MCA, which limits who may place a child for adoption, is no different than the effect of the statutes referred to in these cases which limit who could consent to the adoption of a child. By deciding in these cases that consent could not be arbitrarily and unreasonably withheld, these courts did not substitute themselves for the consenting agency anymore than this Court would by concluding that placement for adoption could not be arbitrarily or un *375 reasonably denied. Therefore, based on precedent and logic, the majority opinion makes no sense to me when it concludes that:
Section 40-8-108, MCA restricts who may place a child for adoption and does not include courts in its list of who may place a child for adoption. Therefore it is clear that the courts could not place Baby Girl W. with the Lewises. No dispute exists that CSS has placed Baby Girl W. for adoption.
The majority concedes that an agency’s refusal to place a child with prospective adoptive parents may be reviewable to determine if that refusal was arbitrary and capricious. However, the majority then goes on to conclude that even if that standard is adopted, the District Court must be affirmed because it found that CSSM’s refusal was not unreasonable. The problem with the majority’s reasoning and the District Court’s decision is that a finding of reasonableness cannot be made without a determination of Baby Girl W’s best interests, and no such determination was made in this case because of the District Court’s erroneous conclusion that § 40-8-108, MCA, prevented it from granting the relators’ petition.
The petitioners in this case received custody of the child (hereinafter referred to as Natasha) from CSSM on March 30, 1989. They signed the written contract referred to in the majority opinion based upon CSSM’s representation that Natasha would remain with the parties for three months. However, by the time she was removed from their home, she had lived with them for 27 months; she had become, for all practical purposes, a member of their family; and she had developed a close personal bond and relationship with all members of the family.
According to the District Court’s findings:
There is no dispute that Petitioners are very attached to Natasha, and that she has become attached to Petitioners and their three children. Further, it is absolutely clear to this Court that Petitioners provided a safe and nurturing home for Natasha. It is clear that Petitioners would be excellent adoptive parents.
The only qualified psychologist to testify on behalf of either party in the District Court was Dr. Mark Mozer, a clinical psychologist from Helena. His testimony was summarized by the District Court as follows:
Dr. Mozer indicated that Petitioners are wonderful parents and were closely bonded with Natasha. He testified that, in his view, the risk of harming Natasha by moving her to California at this stage of the proceedings is great. He feels that the bond between *376 Petitioners and Natasha is great and that moving her to California can cause that bond to be broken and cause severe problems with her in the future.
Section 40-8-114, MCA, sets forth the paramount public policy consideration of the Uniform Adoption Act. It provides in relevant part that:
(1) It is the policy of the state of Montana to ensure that the best interests of the child are met by adoption proceedings.
(2) The primary purpose of adoption is to help a child become a permanent member of a nurturing family that can give him the care, protection, and opportunities essential for his healthy personal growth and development.
(3) The well-being of the adopted child is the main objective in the placement of children for adoption. The needs of the child must be the primary focus of adoption proceedings, with full recognition of the interdependent needs and interests of birth parents and adoptive parents.
It is clear that the District Court did not get to the point of making the necessary findings in this case because it misapplied § 40-8-108, MCA. The District Court concluded:
In the first place, Section 40-8-108, MCA, provides as follows: “A child may be placed for adoption only by: the department; a licensed child placing agency; or the child’s parents.” This provision is unique to Montana law. This Comb has not found any cases interpreting this section but it seems to say that an adoption proceeding cannot begin until one of the parties designated in Section 40-8-108 (here CSSM) places the child for adoption. Since CSSM has not placed Natasha for adoption in Montana, it appears that Petitioners’ argument must fail.
Primarily, however, this Court relies on Section 40-8-108, MCA. This section provides that a child can only be placed for adoption by an agency. Thus, since Natasha has not been placed for adoption in the State of Montana by CSSM, Petitioners must fail.
Why it made any difference to the District Court where Natasha was placed for adoption by CSSM is not clear. However, it is clear that she has been placed for adoption. It is equally clear that the provision relied on by the District Court was, as pointed out by the majority, merely for the purpose of limiting black market placement of children for adoption and does not divest this Court of authority to review *377 placement decisions to assure that they are made in the child’s best interest.
Without deciding what was in Natasha’s best interest, the District Court could not decide whether the adoption agency’s consent was withheld arbitrarily and capriciously. I would conclude that any actions taken by CSSM which were for its own benefit or based on a contract with the foster parents which was entered into under these circumstances, rather than solely for the best interests of Natasha, was unreasonable, arbitrary, and capricious.
I would reverse the District Court and remand this case for further findings regarding the child’s best interests and placement for adoption that will serve those interests.