[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1117 
The plaintiffs below, Phase II, LLC, and Patricia Moore (collectively "Phase II"), appeal from a judgment entered by the Madison Circuit Court in favor of the defendant, the City of Huntsville ("the City"), denying Phase II's application for a class 4 lounge license ("the liquor license"). We affirm.
 Facts and Procedural History
In October 2004, Moore submitted an application under the name Phase II to the City's licensing review committee ("the committee") for a liquor license for a nightclub.[1] As required by the City of Huntsville Code of Ordinances, Moore certified that she had provided notice of the application to all "owners and occupants of residences, businesses, and other property within 500 feet." Code of Ordinances § 3 174 (2003). However, the residents of Wyndham Park, a senior-citizen retirement community, which includes a nursing home, were not included among those to receive the notice. Personnel with the Huntsville Police Department, rather than Moore, notified Wyndham Park that Phase II had applied for a liquor license.[2] In February 2005, the committee denied Phase II application for the liquor license because of concern over the potential negative impact of the nightclub on public safety.
On February 24, 2005, Phase II appealed the committee's denial of the liquor license to the Huntsville City Council ("the city council"). The City's Code of Ordinances provides that on an appeal from the committee's denial of an application for a liquor license, the city council is not bound solely by the factors considered by the committee. Code of Ordinances § 3 177(e) (2003). Rather, the city council shall consider other factors, including "location of the premises." Id.
At the public hearing held by the city council on the application, personnel from *Page 1118 
the Huntsville Police Department reported a direct correlation between the capacity of a class 4 liquor lounge and the number of reported calls for police assistance: lounges with a capacity of 300 or more persons have an average of 15.7 calls per month, while lounges with a capacity of fewer than 300 persons have an average of 6.4 calls per month. The slated capacity of the nightclub for which Phase II is seeking a liquor license is 625 persons. In addition, Wyndham Park residents, their families, and a representative from Victory Tabernacle United Pentecostal Church ("VTUP Church") expressed concern over increased traffic from the nightclub and neighborhood safety. The city council voted to deny Phase II's liquor-license application.
On March 8, 2005, Phase II filed in the Madison Circuit Court a petition seeking both temporary and permanent injunctive relief and alleging that the city council's denial of the liquor-license application was a violation of due process and was arbitrary, capricious, and unwarranted under the circumstances. Phase II also asked the trial court to enjoin the City from denying or interfering with the approval of the liquor-license application. The City was the sole named defendant.
Subsequently, the City removed the case to the United States District Court for the Northern District of Alabama on the basis of federal-question jurisdiction. The City argued that Phase II's allegations implicated federal due process and equal protection. However, the United States District Court dismissed all of the federal claims with prejudice and remanded the case to the Madison Circuit Court. The only remaining cause of action was a request for judicial review, pursuant to Ala. Code 1975, §28-1-6, of the liquor-license denial.
On May 6, 2005, the City moved to dismiss the action in the Madison Circuit Court for failure to state a claim upon which relief could be granted. The City argued that because Huntsville is a Class 3 municipality, § 28-1-6, which applies only to Class 1 and Class 2 municipalities, does not permit judicial review of the denial of a liquor license. Class 3 municipalities are those having populations of "not less than 100,000 and not more than 174,999 inhabit-ants" based on the 1970 federal decennial census. Opinion of the Justices No. 361,693 So.2d 21, 22 (Ala. 1997); Ala. Code 1975, § 11-40-12(a). The population of Huntsville in 1970 was 139,282, placing the City squarely within the Class 3 municipality category. Therefore, § 28-1-6 is not applicable in the present case.
Phase II responded to the City's motion to dismiss and argued that Opinion of the Justices No. 361, on which the City relied, was "not binding" on the court. Further, Phase II maintained that based on current population totals the City should be categorized as either a Class 1 or a Class 2 municipality.
On May 23, 2005, Phase II filed an amended complaint, reasserting its original petition and further arguing that the proceedings in the trial court should be de novo. In addition, Phase II alleged that the City's acts and/or omissions in denying Phase II a liquor license constituted negligence or wantonness.
On June 8, 2005, the City filed a second motion to dismiss, again arguing that the case was due to be dismissed because judicial review under § 28-1-6 was improper and all federal claims had been dismissed upon remand to the circuit court. Further, the City argued that the only available method of judicial review with regard to the denial of the liquor license by a Class 3 municipality was by a common-law *Page 1119 
writ of certiorari.[3] Because Phase II failed to seek a common-law writ of certiorari, the City maintained, the complaint failed to state a claim upon which relief could be granted and should be dismissed.
The City also argued that Phase II could not state a cause of action for negligence because it failed to cite any authority permitting an allegation of negligence relating to the denial of a liquor-license application. Regarding Phase II's claim of wantonness, Ala. Code 1975, § 11-47-190, only permits actions based on the "neglect, carelessness, or unskillfulness" of the municipality's agents or employees. The City contended that because the municipality is protected against wantonness claims, Phase II's wantonness claim failed to state a claim upon which relief could be granted.
On July 14, 2005, the parties stipulated, and the Madison Circuit Court ordered, that the proper method of judicial review of the City's denial of the liquor license was by way of a petition for a common-law writ of certiorari and that Phase II's petition was to be decided based on the certified record presented to the city council. On September 28, 2005, the circuit court denied certiorari review and dismissed the action, finding that the evidence upon which the city council had based the denial of the liquor-license application was legally sufficient and that the decision to deny Phase II's liquor-license application was not arbitrary and capricious but was a proper exercise of the city council's authority. Phase II appeals.
 Standard of Review
"In reviewing a municipal council's exercise of its legislative discretion to approve or disapprove the issuance of a restaurant liquor license, this Court must apply an `arbitrary-and-capricious' standard." Ex parte Trussville CityCouncil, 795 So.2d 725, 727 (Ala. 2001).
 "`A determination is not "arbitrary" or "unreasonable" where there is a reasonable justification for its decision or where its determination is founded upon adequate principles or fixed standards. State Department of Pensions and Security v. Whitney, 359 So.2d 810 (Ala.Civ.App. 1978).
 "`If reasonable minds may well be divided as to the wisdom of [the] administrative board's actions, or there appears some reasonable basis for the classification made by the board, such action is conclusive and the court will not substitute its judgment for that of the administrative body.'"
City of Huntsville v. Smartt, 409 So.2d 1353, 1357-58
(Ala. 1982) (quoting Hughes v. Jefferson County Bd. ofEduc., 370 So.2d 1034, 1037 (Ala.Civ.App. 1979)).
 Discussion I.
To prove that a municipality's decision to approve or to disapprove a liquor license is arbitrary and capricious, the burden is on the claimant to show that there is no reasonable justification supporting the municipality's decision. City ofHuntsville v. Smartt, 409 So.2d at 1357 *Page 1120 
(citing Department of Pensions Sec. v. Whitney,359 So.2d 810, 812 (Ala.Civ.App. 1978)). On appeal, Phase II argues that the city council's decision to deny Phase II's application for the liquor license was arbitrary and capricious. According to Phase II, the complaints from Wyndham Park residents and statistics presented by the Huntsville Police Department did not provide a reasonable justification for the city council to deny the liquor license.
The City, on the other hand, argues that the city council's denial of the liquor license was not arbitrary and capricious but was justified by ample evidence of the potential negative impact of the liquor license on the area in which the nightclub was to be located. See Ex parte Trussville City Council,795 So.2d at 727 (stating that a presumed negative impact on the surrounding area is sufficient to support a finding that a city council did not act arbitrarily and capriciously in denying a liquor license). At the hearing before the city council, Wyndham Park residents,[4] their families, and members of the staff of Wyndham Park testified that the proposed nightclub would result in increased traffic, compromised public safety, and limits on the residents' freedom of movement. A representative of the VTUP Church expressed concern over the effect of the pro-posed nightclub on the church's evening weekend services, the amount of increased traffic in the area, and the risk of drunk-driving incidents. The Huntsville Police Department also presented at the hearing statistics regarding calls of assistance from lounges with a similar capacity, based on "shots fired."
This evidence is sufficient to support the trial court's finding that the city council had not acted arbitrarily and capriciously in denying Phase II's application for a *Page 1121 
liquor license. The city council properly considered the detrimental effects of increased traffic on the area of the proposed nightclub; the impact of the proposed nightclub on public safety; and the general welfare of area residents. The Huntsville Police Department testified that a liquor lounge would have a detrimental effect on police manpower, particularly on Friday and Saturday nights. The police department also testified that police calls from similar lounges typically occur after 2 a.m. and include complaints of loitering, fighting, littering, and gunfire. These police concerns, coupled with the testimony of both Wyndham Park residents and a representative of the VTUP Church, created more than reasonable justification for the city council's denial of the liquor-license application. Therefore, in light of these safety and traffic concerns, we conclude that the city council did not arbitrarily and capriciously deny Phase II's liquor-license application.
 II.
Phase II also devotes a significant portion of its brief to this Court arguing that the record supports an approval of Phase II's liquor-license application. It is not within this Court's scope of review to decide whether Phase II should have been granted the liquor license. Ex parte Trussville City Council,795 So.2d at 728-29. An arbitrary and capricious standard of review does not permit the trial court or this Court to substitute its judgment for the judgment of the city council. Id. This Court has held that although the trial court may disagree with a municipality's decision, the court may not "substitute its judgment for that of a legislative body vested with the power to make such decisions." Pollard v. Unus Props., LLC,902 So.2d 18, 29 (Ala. 2004). Therefore, even if this Court believes Phase II should have been granted the liquor license, we cannot order the City to grant the liquor license unless there is evidence indicating that the city council acted arbitrarily and capriciously in its decision. Here, evidence of the potential negative impact of the liquor license on the area created a reasonable justification for the city council's denial of the application. Therefore, the city council did not act arbitrarily or capriciously in denying the liquor-license application.
Phase II also alleges that it has complied with all applicable laws, codes, and regulations. However, Alabama courts have expressly held that strict compliance with all statutory requirements for the issuance of a liquor license does not automatically entitle the applicant to the license. See Exparte Trussville City Council, 795 So.2d at 728
(citing Potts v. Bennett, 487 So.2d 919, 922
(Ala.Civ.App. 1985)). Rather, Alabama municipalities are accorded broad discretion when reviewing a liquor-license application.795 So.2d at 728. A municipality exceeds this discretion only when the denial of the liquor license is shown to be arbitrary and capricious. 795 So.2d at 727. Therefore, even though Phase II complied with all applicable statutory requirements, the city council was within its authority to deny the application based on the potential negative impact of a nightclub on the surrounding area.
 III
Phase II also alleges that the city council's decision to deny the liquor license was motivated by fear, scare tactics, and prejudice. Phase II asserts that the Huntsville Police Department's visit to Wyndham Park was improper and was calculated to frighten residents regarding Phase II's liquor-license application. Phase II's contention is without merit. The City's Code of Ordinances explicitly provides that the *Page 1122 
chief of police is required to conduct an investigation regarding all liquor-license applications. Code of Ordinances § 3-175 (2003). Thus, the Huntsville Police Department properly contacted the Wyndham Park residents regarding Phase II's liquor-license application.
Likewise, Phase II argues that the statistics presented to the city council by the Huntsville Police Department created un-substantiated and baseless fear among members of the city council. This argument too is without merit. The statistics, derived from police data involving similar liquor lounges, clearly indicated a direct correlation between the capacity of a lounge and the number of calls for police assistance from the lounge — the greater the capacity of the lounge, the greater the number of calls. Phase II alleges that the statistics relied on by the city council were flawed; yet Phase II offers no explanation of how those statistics were in error, nor did it provide statistics or other documentation in support of its own position.
Finally, Phase II argues that it received disparate treatment compared to the other 32 class 4 licensed liquor lounges in the City. Phase II relies on a statement by an attorney for the owner of the property on which the nightclub was to be located that "there are at least 2 other senior citizens' homes in Huntsville that are located in close proximity to lounge/bars that serve alcohol." (Phase II's brief, pp. 27-28.) Phase II's argument is not persuasive. First, Phase II presented no evidence indicating that these "other senior citizens' homes" are comparable to Wyndham Park's retirement community and its nursing home, nor does Phase II establish that the "lounge/bars" to which the attorney referred did not predate the presence of the "senior citizens' homes." Second, "`a license to engage in the sale of intoxicants is merely a privilege with no element of property right or vested interest.'" Ott v. Everett, 420 So.2d 258, 261
(Ala. 1982) (quoting Broughton v. Alabama Alcoholic BeverageControl Bd., 348 So.2d 1059, 1060 (Ala.Civ.App. 1977)). The city council had broad discretion to grant or to deny Phase II's liquor-license application, provided the city council had a reasonable basis for its decision. There is no evidence in the record indicating that Phase II was treated disparately or differently than any other liquor-license applicant.
 Conclusion
The trial court's finding that the city council did not act arbitrarily and capriciously in denying Phase II's liquor-license application was supported by sufficient evidence; therefore, the trial court's judgment is affirmed.
AFFIRMED.
NABERS, C.J., and LYONS, WOODALL, and PARKER, JJ., concur.
[1] Moore had previously applied to the committee for a liquor license in July 2004 under the name "Club Medallion." Because of distance-restriction issues, the committee denied Moore's application. Subsequently, the owner of the property on which the nightclub was to be located, Reliance Agency, Inc., re-subdivided the property to comply with the City's zoning ordinances. Moore incorporated under the name Phase II, LLC, and again applied for the liquor license.
[2] There was apparently some confusion about whether Wyndham Park fell within the 500-foot notice provision. Phase II maintains that the door-to-door distance from the nightclub to Wyndham Park is 685 feet. The record indicates that the distance between the property lines of Wyndham Park and the nightclub is 350 feet. See note 4.
[3] Alabama Code 1975, §§ 28-1-6 and -7 provide a statutory right of direct appeal from the denial of a liquor license by a Class 1, 2, or 4 municipality. However, no such right of appeal exists for the denial of a liquor license by a Class 3 municipality. Where there is no statutory right of direct appeal from a local government's decision to deny an application for a liquor license, the only proper method of judicial review is by the common-law writ of certiorari. Sanders v. City ofDothan, 642 So.2d 437, 440 (Ala. 1994) (`"common-law certiorari is the appropriate method to have the courts determine the question as to whether a liquor license was revoked without cause where there is no prescribed method'" (quoting Southallv. Stricos Corp., 275 Ala. 156, 159, 153 So.2d 234, 237
(1963))).
[4] It appears Phase II is arguing that the city council improperly considered comments of the Wyndham Park residents. Factually, this contention is incorrect. Phase II maintains that Wyndham Park is outside of the 500-foot mandatory notice boundary, specifically arguing that the door-to-door distance from Wyndham Park to the proposed nightclub is 685 feet. However, the City's Code of Ordinances states that notice shall be given "to owners and occupants of residences, businesses, and other property within 500 feet of the property to be licensed."
Code of Ordinances § 3-174 (2003) (emphasis added). The record indicates that the distance between the property lines of Phase II and Wyndham Park is 350 feet, clearly within the mandatory 500-foot notice boundary. Moreover, the City's Code of Ordinances explicitly provides that "any person owning or occupying property within 500 feet of any proposed licensed premises, and any member of the public who wishes, may be heard on the application." Code of Ordinances § 3-51 (2003). Therefore, Wyndham Park residents properly testified at the hearing before the city council.
Phase II also argues that persons residing at Wyndham Park "are not `residents' as the term would define an area within the city of Huntsville zoned residential." Phase II contends that these persons are "occupants of a commercial facility located within an area zoned light industry," and, thus, that the occupants at Wyndham Park have "absolutely no legal standing or basis upon which to object to [its] license application." (Phase II's brief, pp. 14-15.) Phase II provides no factual or legal authority in support of its contention. Testimony elicited at the hearing before the city council indicated that an area zoned for light industry specifically provided for commercial, industrial, and residential uses; thus, the Wyndham Park retirement community and the nursing home are permissible residential uses within an area zoned light industry.
Additionally, Phase II provides no legal authority for the argument that the city council acted improperly in hearing Wyndham Park residents testify at the hearing. "`When an appellant fails to cite any authority for an argument on a particular issue, this Court may affirm the judgment as to that issue, for it is neither this Court's duty nor its function to perform an appellant's legal research.'" Hall v. Hall,903 So.2d 78, 80-81 (Ala. 2004) (quoting City of Birmingham v.Business Realty Inv. Co. 722 So.2d 747, 752
(Ala. 1998)).